[No. 25622. Department Two. July 26, 1935.]

C. C. WATSON, *Appellant,* v. R. W. MATCHETT, *Respondent.*[1]

*R. H. Back* and *C. D. Cunningham,* for appellant.

*Bates & Burnett,* for respondent.

STEINERT, J.—Plaintiff brought this action to compel dissolution of a partnership and an accounting between the partners. Defendant answered, controverting material portions of the complaint, but also praying for a dissolution and an accounting. The court, after trial without a jury, made certain findings, one of them being that there was due from defendant to plaintiff the sum of $155.90. From the findings thus made, the court concluded, as a matter of law, that the partnership should be dissolved and that plaintiff should have judgment against defendant in the above amount. From such judgment, the plaintiff, being dissatisfied with the amount allowed him, has appealed.

The record in this case presents a rather complex situation, and the evidence is so conflicting and con-

[1]Reported in 47 P. (2d) 1001.

fusing that it is difficult to determine the exact amount due the appellant.

The facts, in general, are these: Appellant and respondent entered into an oral partnership agreement sometime in the month of August, 1930. The partnership was to engage in the retail drug business, for an indefinite length of time, in the city of Vancouver, Washington, under the firm name of Eastside Pharmacy. The parties were each to put into the business the same amount of cash, were to share the profits and losses equally, and were to devote their entire time and attention to the conduct of the partnership affairs. The appellant put $1,475 cash into the business; respondent put in $1,114.

Prior to the formation of the partnership, the drug store had been owned and operated by a Mrs. Matthews. She also had owned the real estate on which the drug store was located, against which was a real estate mortgage in the sum of approximately seventeen hundred dollars, payable in monthly installments of thirty dollars each. The partnership purchased the drug business and the real estate from Mrs. Matthews on the basis of the invoice price of the stock of goods, which amounted to fourteen hundred dollars. The purchase price was paid by the assumption of one thousand dollars of Mrs. Matthews' back bills and giving her the balance of four hundred dollars in cash. The partnership also assumed the mortgage on the real estate.

Back of the drug store was an apartment, and it was agreed between the parties that the apartment should be used as living quarters by the appellant, the respondent and his wife, and by a Mr. Norman, who was respondent's father-in-law. For his board, Mr. Norman was to pay seven dollars a week, which amount was to belong to the partnership; Mrs. Matchett was to do the

cooking for the four, and all the living expenses were to be paid out of the business.

During the time that the partnership functioned as such, the appellant withdrew therefrom various sums totaling $116.19; respondent, during the same period, withdrew for his personal expenses sums totaling $641.88.

The parties operated the business under their agreement for a little over two years. Difficulties, however, arose between them in the month of September, 1932, and as a result appellant withdrew from active participation and respondent continued the operation alone. In November, 1932, appellant began this action, seeking a dissolution and accounting. Sometime thereafter and while the action was pending, a partnership creditor filed suit against the partnership and attached the stock of goods and fixtures. That suit proceeded to judgment, and the attached property was sold, leaving a considerable portion of the judgment unsatisfied. The respondent then reopened the business, apparently on his own account, in the same premises, and was so operating it at the time of trial of this cause.

As nearly as we can gather the situation from the pleadings, both parties to the suit at first desired to have a complete accounting and settlement between them, which would include a sale of all the assets, the collection of all debts owing the partnership, the payment of all debts owing by it, and the distribution of the surplus, if any, between them, according to their respective interests. However, by the time that the case came on for trial in February, 1933, the record discloses that the partnership was practically insolvent. The attachment action above mentioned had wiped out about all of the physical assets of the partnership, with the exception of what equity there may have been in the real estate and a few fixtures of in-

significant value. The equity in the real estate could not have been worth much, if anything, at the time of the transaction between the partnership and Mrs. Matthews, because, as already stated, the real estate was turned in for the mere assumption of the mortgage covering it. Two years' installments on the mortgage, however, had been paid in the meantime, so that the value of the equity had substantially improved.

Appellant claims as another asset of the business the sum of $784 owing by Mr. Norman on the board bill. It is conceded by respondent that the board money was never actually paid into the company's till, but there was considerable evidence to the effect that the money was paid to Mrs. Matchett by her father and used by her in providing groceries and supplies for the apartment, thereby reducing, to that extent, the amount that the partnership would otherwise have had to advance for the same purpose. The small amount which was actually contributed by the firm to the payment of living expenses lends considerable force to respondent's contention in this respect.

We get a very definite impression also from the record that the parties were not very much concerned about their ultimate personal liability for the partnership debts. One large creditor had sued and had apparently limited its attempt to collect by attachment of the partnership property. It also appears that appellant, at the time of the trial, was no longer living in Vancouver, but was residing in Centralia, almost a hundred miles distant.

From the findings made by the court, it is apparent that the court tried the case upon the theory that, under the situation as it then existed, the nearest approach to a fair and accurate adjustment between the parties would be to permit respondent to retain what assets there were left of the business and as-

sume its liabilities, and to compensate appellant for what he was justly entitled to by granting him a money judgment against respondent. Appellant does not seem to complain so much about the theory upon which the case was decided, but raises his voice most strenuously against the amount of the recovery allowed him. His appeal is from that portion of the judgment which decreed that appellant should recover from the respondent the sum of $155.90. In view of the manner in which the case was tried, the condition of the record before us, and the ultimate facts as we conceive them to be, we shall proceed upon the same theory as that followed by the trial court.

With this objective in mind, we have very painstakingly read the evidence in the case, in an endeavor to determine, as nearly as we can, whether appellant has received, by the judgment, less than that to which he is justly entitled. The case being one of equitable cognizance, it is triable *de novo* here, and we are not bound by the court's findings. Without going too much into unnecessary detail, we shall state what we believe the preponderance of the evidence shows with reference to the actual assets and liabilities proper to be considered in determining an equitable adjustment and settlement.

First, as to the assets: The equity in the real estate was shown, by the preponderance of the evidence, to be worth not to exceed $1,016.50. The appellant put into the business $363.06 more than respondent did. The respondent drew from the funds of the business $525.69 more than did the appellant. The rental value of the property was thirty dollars per month. Respondent had the use of the premises from the time that appellant withdrew from participation in the business until the time of trial, a period of four months, thereby receiving the benefit of rental amounting to one hun-

dred and twenty dollars. These various amounts, considered in the nature, and comprising the whole of, the assets of the business, totaled $2,025.25. According to the preponderance of the evidence, the liabilities amounted to $1,753.10. The difference between these two amounts is $278.15, one-half of which would be $139.08. For the latter amount, appellant should have had judgment. The court, however, allowed him $155.90. The consequence is that the amount of the judgment is something over sixteen dollars greater than our computation.

So far as the item of Mr. Norman's board bill is concerned, a reading of the record convinces us that the full amount was paid to Mrs. Matchett and was used by her in its entirety for necessary living expenses which the business was obligated to pay. Having been paid, this item could not be considered as an uncollected asset. Upon the theory under which the case was tried, appellant was allowed all that he was entitled to recover.

The judgment is affirmed.

BLAKE, MITCHELL, MAIN, and HOLCOMB, JJ., concur.