[No. 14880-3-II.   Division Two.   April 21, 1994.]

ROBERT L. GUNTLE, *Appellant*, v. KIMBERLY A. BARNETT, ET AL, *Respondents*.

*Jon C. Parker* and *Parker, Johnson, Edwards & Parker,* for appellant.

*Kimberly A. Barnett-Guntle,* pro se.

MORGAN, C.J. — Robert Guntle appeals a judgment distributing partnership property. Kimberly Barnett cross-appeals a finding that her husband, Tommy Guntle, was a partner. Hereafter, we will usually refer to Robert Guntle and Kimberly Barnett by their last names, and to Tommy Guntle by his first name as well as his last.

Tommy Guntle is Robert Guntle's son and Kimberly Barnett's husband. Thus, Robert Guntle is Kimberly Barnett's father-in-law.

The Robinson and Rounds Seafood Company was for sale in late 1986. It owned a building at Bay Center, Washington, in which it operated a fish processing business. It also leased and operated a boat launch facility at Chinook, Washington.

Barnett wanted to purchase Robinson and Rounds, but she lacked the necessary funds. Thus, she spoke with Guntle, and they orally agreed to purchase the business as 50-50 partners.[1] Barnett was to be the "managing partner";[2] she would "take care of the books and sell the fish".[3] Guntle was to assist with financing and "do whatever I can do to help".[4] There was no agreement concerning duration of the partnership.

---

[1] There is a dispute over whether Barnett's 50 percent was owned solely by her, or by the marital community comprised of her and her husband, Tommy Guntle. Elsewhere in this opinion, we hold that Tommy Guntle was a partner, and that Barnett's half was owned by both him and her.

[2] Report of Proceedings, at 171.

[3] Report of Proceedings, at 26.

[4] Report of Proceedings, at 26. It was known from the beginning that Guntle could not give much time to partnership affairs. He already owned a nutrition store and a fishing boat, and he was regularly employed as a longshoreman. Report of Proceedings, at 26-27.

On July 31, 1987, the partnership purchased Robinson and Rounds for $95,000. A written buy-sell agreement was signed by Guntle, Barnett, and Tommy Guntle as purchasers, and by Robinson and Rounds as sellers.

The purchase price was paid with borrowed funds. Guntle borrowed $55,000 from a friend, Emery Kiske; in exchange, he gave a promissory note secured by mortgages against his house and fishing boat. Barnett borrowed about $8,000 from a friend, Mickey Geehan, apparently without security. The sellers financed $25,000 in exchange for a promissory note secured by various encumbrances against property owned by the business. The sellers also credited $10,000 in exchange for Guntle, Barnett and Tommy Guntle assuming a $10,000 debt to a corporation called Lorton Enterprises, Inc.

Following July 31, 1987, the business continued to engage in the purchase, packing, transportation and sale of fish products at Bay Center, and to operate a boat launch facility at Chinook. However, the parties renamed it Willapa Seafoods.

Disagreements soon developed among the parties, and in July 1988, Guntle unilaterally took over operation of the boat launch facility at Chinook. Barnett continued to operate the fish plant in Bay Center.

On December 5, 1988, Guntle demanded access to the partnership's books and records. Barnett refused.

On April 17, 1989, Guntle sued Barnett and Tommy Guntle. He asked for an accounting and other equitable relief, including, if necessary, "distribution of [the partnership] assets remaining after payment of the creditors". Barnett and Tommy Guntle answered that a partnership existed, and that the partners were Guntle, Barnett and Tommy Guntle.[5] They also counterclaimed for an accounting of all partnership funds received by Guntle.

On May 17, 1989, Guntle moved for appointment of an accountant to audit the records of the business at Barnett's

---

[5]In section 3 of Guntle's complaint, he alleged that "Plaintiff and Defendants Barnett and Guntle, as partners, purchased the assets of [Robinson and Rounds]." In their answer, Barnett and Tommy Guntle admitted this allegation.

and Tommy Guntle's expense.[6] The court denied the motion but ordered that Guntle have access to all records of the business.

A bench trial was held August 15 and 16, and September 5, 1990. At its conclusion, the trial judge found that "Willapa Seafood is a Washington general partnership consisting of Robert Guntle as 50% partner, and Kimberly Barnett and Tom Guntle as 50% partner. . . ."; that the partnership assets had a total value of $112,615.84;[7] that "[t]he only proven obligation of the partnership is the Kiske note with a balance due of $51,500 plus interest"; and that "[t]he current proven operating debts of the corporation total $47,448.85". The court did not require that the partnership's assets be applied to discharge the partnership's liabilities; rather, it distributed the partnership's assets and debts much as might be done in a marital dissolution case. It awarded Barnett and Tommy Guntle the partnership's interest in the Bay Center property. It awarded Guntle the partnership's interest in the Chinook boat launch facility. It required that Barnett and Tommy Guntle assume and pay all debts, including the Kiske note. It granted Guntle a money judgment in the amount of $8,602.04,[8] and it declined to award reasonable attorney's fees to either party.

Four problems comprise the core of this appeal. The first is whether the trial court could properly conduct an accounting without the assistance of an accountant. The second is whether the trial court could properly distribute the partnership assets and debts in kind, as opposed to selling the assets, liquidating the debts, and distributing

---

[6]Apparently, Guntle wanted the court to appoint the accounting firm of Aiken and Sanders. He later hired that firm at his own expense, paying $6,360 "to obtain an account of the partnership". He did not call anyone from that firm to testify at trial.

[7]Specifically, the court found that the Bay Center property had a net value of $51,260.84; that the Chinook property had a value of $39,000; and that personal property had a value of $22,355, all but $45 of which was possessed by Barnett.

[8]As we note again later, the record shows nothing about how this amount was derived.

any surplus in cash. The third is whether the trial court properly included in its money judgment all of the damages to which Guntle was entitled. The fourth is reasonable attorney's fees at trial and on appeal.

## I

It is undisputed that Guntle had the right to an accounting. *See* RCW 25.04.430; *see also* RCW 25.04.210-.220.[9] He contends, however, that the trial court could not properly implement that right without the assistance of an accountant, and that it erred by denying his motion to appoint an accountant at Barnett's expense.

In an action for an accounting, "the court (or, more commonly, an auditor, master, or referee subject to court review) conducts a comprehensive investigation of the transactions of the partnership and the partners, adjudicates their relative rights, and enters a money judgment for or against each partner according to the balance struck". 2 Alan R. Bromberg & Larry E. Ribstein, *Partnership* § 6.08(a) (1994); *see also Holman v. Cape*, 45 Wn.2d 205, 206, 273 P.2d 664 (1954) (in action for accounting, trial court has power "not only to state the account between the parties but to enter a judgment in favor of one and against another, as the state of the account may require.") (quoting *Yarwood v. Billings*, 31 Wash. 542, 543, 72 P. 104 (1903)). When an action for an accounting is being used to wind up the partnership's affairs, the court is obligated to provide "for a full accounting of the partnership assets and obligations and distribution of any remaining assets or liabilities to the partners in accordance with their interests in the partnership." *Box v. Crowther*, 3 Wn. App. 67, 77-78, 473 P.2d 417 (1970).

Other jurisdictions have held that whether to appoint an accountant is a matter addressed to the sound discretion of the trial court. *Stotsenburg v. Frost*, 465 Pa. 187, 192, 348 A.2d 418, 421 (1975); *John v. Terry*, 260 Or. 478, 490 P.2d 506 (1971); 59A Am. Jur. 2d *Partnership* § 1066 (1987); *see Brandenburg v. Brandenburg*, 234 Ark. 1117, 356 S.W.2d

---

[9]See also Br. of Respondent, at 20.

625 (1962) (discretion abused under specific circumstances). Washington cases seem in accord, or at least consistent. *Gauthier v. Dickerson*, 41 Wn.2d 419, 422, 249 P.2d 370 (1952) (in action seeking rendition of an accounting, trial court could determine issues "in any manner proper to do justice between the parties"); *In re Partnership Estate of Tembreull*, 37 Wn.2d 93, 103-04, 221 P.2d 821 (1950) (trial court not required to have a certified public accountant examine partnership books and records on file with court; partner could arrange for examination at his option); *Fincham v. A.U. Pinkham & Co.*, 133 Wash. 517, 521-22, 233 P. 913 (1925) (party had right to thoroughly examine partnership books, and thereafter to have a "full hearing"). The question, then, is whether the trial court abused its discretion when it denied Guntle's motion for an accountant.

It did not. Long before trial, the court ordered that each party have access to the records of the business,[10] and this gave each party ample opportunity to prepare its own accounting. Additionally, the court held a 3-day bench trial, which gave each party ample opportunity to present its own accounting and comment on its opponent's. *See Fincham*, 133 Wash. at 521-22. These procedures were fair and adequate under the circumstances, and the trial court was not required to employ an accountant.

## II

Guntle next contends that the trial court was not permitted to distribute the partnership's assets and debts in kind. In his view, the court was required to sell the assets, liquidate the debts, and distribute any surplus in cash.[11]

---

[10]Guntle makes various arguments designed to show that he did not receive adequate pretrial access to the records of the partnership. It appears, however, that he was given adequate access to such records as there were. His real complaint is that Barnett failed to keep adequate records, and we discuss that complaint below.

[11]Guntle also says that if an accountant is not employed, the only alternative is "to deny Defendants any interest in the partnership and award all remaining assets to Plaintiff." Br. of Appellant, at 13. He further says he requested this remedy below and that it "should have been granted". Br. of Appellant, at 13.

According to Barnett, this contention should not be reviewed for several reasons. First, she says that Guntle has failed to properly assign error in his brief. In our view, however, his assignments are specific enough for us to discern and decide the issues at hand.

Second, Barnett says Guntle failed to raise the present issue below. In our view, however, he did. Throughout the trial, both he and Barnett were asking the trial court to distribute the partnership's assets and debts according to the Uniform Partnership Act, RCW 25.04.

■ Third, Barnett says Guntle invited error when he proposed in final argument that all of the assets and the Kiske debt be distributed to him, and that the remaining debts be distributed to Barnett. Although this contention might have merit if the trial court had adopted Guntle's proposal, it did not do that; rather, it devised and ordered its own. In so doing, it was "governed by the applicable law". *See Maynard Inv. Co. v. McCann*, 77 Wn.2d 616, 623, 465 P.2d 657 (1970).

■ Fourth and last, Barnett says "that because [Guntle] invoked the equitable powers of the court, [the court] had authority to liquidate in kind the partnership assets."[12] If the premise is that Guntle's conduct empowered the court to distribute in kind, the argument is a variation of the invited

---

He cites and relies on *In re Partnership Estate of Tembreull*, 37 Wn.2d 93, 96, 221 P.2d 821 (1950).

We reject any assertion that Guntle is automatically entitled to all partnership assets. To be sure, *Tembreull* and the case it follows, *Simich v. Culjak*, 27 Wn.2d 403, 178 P.2d 336 (1947), are examples of situations in which a partner who breaches his or her fiduciary duty loses all of his or her interest in the partnership. This is not true, however, as a matter of forfeiture. Rather, it would appear to be true because in each cited case the at-fault partner squandered more than the value of his partnership share; for example, in *Simich* only $3,126.59 remained in partnership funds, while two innocent partners were yet owed $7,395.65 and $14,570.14 respectively. 27 Wn.2d at 407. Indeed, Guntle himself notes that "R.C.W. 25.04.380 does not allow forfeiture or reduction in a partner's share based upon fault." Br. of Appellant, at 26. *Tembreull* and *Simich* spring from their facts, and neither applies here unless Barnett misspent more than the value of her partnership share.

[12]Br. of Respondent, at 31.

error contention, and it fails for the reasons already discussed. If the premise is that the court had "equitable powers" entitling it to disregard applicable partnership statutes, the argument also fails, for obvious though different reasons. Before the enactment of Laws of 1945, ch. 137, Washington courts may have dealt with partnerships by using their "equitable powers", *see Watson v. Matchett*, 182 Wash. 544, 47 P.2d 1001 (1935), but at least since 1945 their "equitable powers" have been subject to partnership statutes.

We turn now to the merits of Guntle's contention. A partnership can be dissolved "by any partner ceasing to be associated in the carrying on as distinguished from winding up of the business", RCW 25.04.290, or by court decree. RCW 25.04.320. Dissolution may or may not violate the partnership agreement. RCW 25.04.310.

Regardless of whether dissolution violates the partnership agreement, each partner is entitled to have "the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners. . . .". RCW 25.04.380(1) (dissolution not in violation of partnership agreement); RCW 25.04.380(2)(a)(i), (2)(c)(i) (dissolution in violation of partnership agreement); RCW 25.04.400(3), (4). An exception exists when dissolution violates the partnership agreement and the partners not causing dissolution want to continue the business. Under those conditions, the partners not causing dissolution may retain and use the partnership property "during the agreed term" of the partnership — but only if they post a bond or pay the exiting partner in cash, and only if they indemnify or release the exiting partner from all present and future partnership liabilities. RCW 25.04.380(2)(b), (2)(c)(ii).

The exception is not pertinent here. The trial court did not order that either partner post a bond or buy out the other's partnership interest, and neither party now claims that the trial court should have done so.

The exception not being pertinent, the trial court was required to distribute partnership assets and debts by having "the partnership property applied to discharge its liabilities,

and the surplus applied to pay in cash the net amount owing to the respective partners. . . .". RCW 25.04.380(1); RCW 25.04.380(2)(a)(i), (2)(c)(i). The trial court was not authorized to distribute partnership assets and debts in kind absent consent of all concerned. Thus, the trial court erred, and the case must be remanded for further proceedings.

### III

Guntle next contends that Barnett improperly used or failed to account for certain partnership funds. He claims that he is entitled to be reimbursed for his share of such funds, and that the trial court failed to adequately reimburse him when it entered judgment for $8,602.04.

Guntle's first specific claim is that Barnett improperly paid $45,425.41 to her husband, Tommy Guntle. According to the applicable rule of law, a partner is not entitled to wages for acting in the partnership business. RCW 25.04.180(6). The trial court found that "Tom Guntle took $45,425.41 of partnership funds as wages,"[13] even though he was a partner in the partnership.[14] This was done without the knowledge or approval of Robert Guntle. It follows that Barnett and Tommy Guntle breached their partnership duties, and that Guntle is entitled to be reimbursed for his share.[15]

Guntle's second specific claim is that Barnett improperly spent partnership funds for nonpartnership purposes such as babysitting. According to the applicable rule of law, a partner is not entitled to spend partnership funds for nonpartnership purposes. *Cheesman v. Sathre,* 45 Wn.2d 193, 200, 273 P.2d 500 (1954). The trial court found that

---

[13]Finding of fact 5.

[14]Barnett and Tommy Guntle cross-appeal the trial court's finding that Tommy Guntle was a partner in the partnership. We hold the finding is supported by substantial evidence. Tommy Guntle was listed as a partner in the partnership's tax returns, ex. 30, and Barnett admitted he was a partner when she filed her initial answer in this case.

[15]At trial, Barnett and Tommy Guntle attempted to avoid this result by arguing that the partnership had impliedly agreed to pay wages to Tommy Guntle. The trial court declined to so find, and we agree with that holding.

Barnett spent $6,514[16] for such purposes. It follows that Barnett breached her partnership duties, and that Guntle is entitled to be reimbursed for his share.

Guntle's third specific claim is that Barnett used partnership funds to pay down an American Express credit card; that she has the burden of showing that such funds went for partnership purposes; and that she has failed to sustain that burden. By her own testimony, Barnett was the partnership's managing partner.[17] A managing partner must keep books and records enabling him or her to "render complete and accurate accounts of all the partnership business."[18] *In re Partnership Estate of Tembreull*, 37 Wn.2d at 102 (quoting *Simich v. Culjak*, 27 Wn.2d 403, 408, 178 P.2d 336 (1947)); *Cederlund v. Cederlund*, 7 Wn. App. 320, 499 P.2d 14 (1972). "[E]very presumption will be made against" the managing partner in the absence of such books and records. *Estate of Tembreull*, 37 Wn.2d at 102 (quoting 2 Sir Nathaniel Lindley, *Partnership* 948 (2d Am. ed. 1888)); *Cederlund*, 7 Wn. App. at 321 (quoting *Tembreull*); 2 Bromberg & Ribstein § 6.05, at 6:53-:54. Here, the trial court found that Barnett used partnership funds to make payments on an American Express card that she had obtained without Guntle's knowledge or consent. The trial court further found that "Barnett, despite requests, has not provided copies of receipts for payments made to American Express Company as set forth in Exhibit 16."[19] As Guntle points out in his brief, the payments set forth in exhibit 16 total $8,193.50. Thus, the trial court's findings generate a presumption that Barnett spent the $8,193.50 for nonpartnership purposes, and Guntle is entitled to be reimbursed for his share.

---

[16]Omitting wages paid to Tommy Guntle, the figures in finding of fact 8 total this amount.

[17]Report of Proceedings, at 171.

[18]This rule exists because the managing partner acts as trustee for the partnership. *Tembreull*, 37 Wn.2d at 102 (quoting *Simich v. Culjak*, 27 Wn.2d at 408); RCW 25.04.210.

[19]Finding of fact 18.

■ Guntle's fourth specific claim is that Barnett sold various partnership assets for $21,000, and failed to account for $18,000 of the proceeds.[20] That Barnett sold partnership assets for $21,000 was established as a matter of law, for she herself testified to that effect.[21] That Barnett failed to account for $18,000 of the proceeds was also established as a matter of law, for she produced no books or records that could be construed as satisfying her duty to account. Thus, it is presumed that $18,000 went for nonpartnership purposes, and Guntle is entitled to be reimbursed for his share.

■ Having established that he is entitled to be reimbursed for his share of these various amounts, Guntle contends that the trial court failed to provide for reimbursement when it entered its judgment for $8,602.04. We have no way of knowing, for the findings give no hint of how the trial court calculated its figure of $8,602.04. Lacking adequate findings, we vacate the judgment and direct that it be recalculated on remand. When next entered, it shall be accompanied by written findings and conclusions showing how it was computed.

## IV

Guntle argues that the trial court was required to award him reasonable attorney's fees. Primarily, he cites and relies on *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 557 P.2d 342 (1976).[22]

■ *Tang* does not command that fees be awarded. Rather, it merely permits an award of fees when one partner establishes that another has breached his or her fiduciary duty to the partnership.[23] Whether to award fees in a particular

---

[20]At the time of trial, $3,000 was being held in the registry of the trial court.

[21]Report of Proceedings, at 383-84, 490-91, 495, 498, 500, 504.

[22]Guntle also cites *Brougham v. Swarva*, 34 Wn. App. 68, 661 P.2d 138 (1983), but in *Brougham* the appellate court upheld a trial court's denial of attorney's fees. *Brougham* supports Barnett if it supports anyone.

[23]Alternatively, if *Tang* holds that a partner can recover reasonable attorney's fees on a "common fund" theory, it is clear that a partner can do that only when acting for someone other than himself or herself. Guntle cannot meet that criterion in this case.

case is a matter addressed to the discretion of the trial court.

There was no abuse of discretion here. The trial court found that both Guntle and Barnett were at fault, in the sense that each had breached various partnership duties. Guntle attacks that finding as to him, but for purposes of reasonable attorney's fees it is amply supported by the evidence. We conclude that the trial court acted correctly when it denied reasonable attorney's fees to both sides.

On remand, the trial court shall distribute partnership assets and debts by having "the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners. . . .". RCW 25.04.380(1); RCW 25.04.380(2)(a)(i), (2)(c)(i); RCW 25.04.400(3), (4).[24] If the surplus is insufficient to pay the net amount owing to the respective partners, a money judgment may again be entered, but it must take into account the sums for which Guntle is entitled to be reimbursed. It also must be supported by written findings that show how it was calculated. Findings shall be based on evidence already in the record, unless the trial court, in its discretion, deems the taking of new evidence necessary to accomplish justice between the parties. The court is not required to award reasonable attorney's fees to either party.

The judgment is vacated, and the case is remanded for proceedings not inconsistent with this opinion. Neither side shall receive fees or costs on appeal. Arguments not discussed are intentionally omitted, for they are immaterial or lack merit.

ALEXANDER and HOUGHTON, JJ., concur.

---

[24]This assumes, of course, that partnership assets are still on hand or otherwise retrievable. If not, the trial court may fashion appropriate alternative relief.