211 P.3d 469 (2009)
Arthur G. SIMPSON, Respondent,
v.
Alan K. THORSLUND and Louise M. Thorslund, husband and wife, and the marital community comprised thereof, Thorslund Construction, Inc., a Washington corporation; and Northwest Housewrights, Inc., a Washington corporation, Appellants.
No. 61590-4-I.
Court of Appeals of Washington, Division 1.
July 20, 2009.
*470 Philip M. deMaine, Wade Neal, Tacoma, WA, for Respondent.
Gary W. East, The Law Office of Gary W. East, Seattle, WA, for Appellants.
GROSSE, J.
¶ 1 After a bench trial, Arthur Simpson prevailed in his suit against Alan Thorslund for misappropriation of company funds, unpaid wages, and failure to repay a loan. Here, Simpson and Thorslund were found to be de facto partners, having failed to form a *471 corporation. No full accounting of partnership assets and liabilities was ever undertaken prior to the trial court's entry of judgment in favor of Simpson. Under the common law, a formal accounting was a prerequisite to any action between partners. But, since Washington's adoption of the Revised Uniform Partnership Act (RUPA) in 1998, a full accounting of partnership assets and liabilities is no longer required.[1] Washington partnership law is governed by statute and the legislature's intent that RUPA supersede and supplant the common law with regard to partnership is clear. A partnership accounting is no longer a precondition to an action between partners. Therefore, we affirm.

FACTS
¶ 2 Alan Thorslund and his wife owned a small, high-end custom home construction company called Northwest Housewrights, Inc. (NHI). Arthur Simpson and Thorslund were friends for over 30 years and prior to this action had successfully worked together for a number of years. In 1997, Simpson began working as a laborer for NHI part time, quickly moving to full time work for the company at a salary of $60,000 per year.
¶ 3 By 2000, Thorslund was struggling to keep NHI solvent. NHI and Thorslund failed to pay more than $200,000 in payroll taxes owing the Internal Revenue Service (IRS) for the years 2000 through 2003. As its sole owner, Thorslund faced personal liability for NHI's unpaid taxes. In 2000, Thorslund asked Simpson for a loan of $50,000 to keep NHI afloat. Despite Simpson making the loan, the company's financial difficulties continued. Simpson continued to work for NHI as its day-to-day operations manager until it ceased doing business in 2003. Simpson alleges he was never paid the full salary owed him under his employment contract with NHI. Simpson contends that Thorslund assured him that he would indeed be paid and to be patient in receiving remuneration.
¶ 4 By 2002, NHI owed both excise taxes to the Washington State Department of Revenue and, primarily, employment taxes to the IRS. NHI was also delinquent on its debts to suppliers and various other creditors. On the verge of bankruptcy, Thorslund sought advice from a Certified Public Accountant (CPA), David E. Hill, of Tax Alternatives, Inc. Hill negotiated a partial abatement of the penalties and interest with the Department of Revenue and a partial abatement of a matching portion of payroll taxes that would have otherwise been due the IRS on behalf of NHI. Thorslund wanted to continue business operations in home construction by founding a new company, but Hill advised him that the IRS would likely require a change in ownership in the company so that the new entity was not simply a continuation of NHI.
¶ 5 Thorslund Construction, Inc. (TCI) was founded in April 2003 and NHI was wound up. Thorslund and Simpson agreed to become equal owners of the new company, each owning a 50 percent share. Both Simpson and Thorslund agreed to take smaller salaries from TCI than they had previously received from NHI. Daniel Gandara, an attorney, was retained to draw up the appropriate papers for incorporation in the state of Washington, including a shareholder agreement and a proposal for the issuance of stock. Gandara testified at trial that these documents were never filed with the secretary of state because both Simpson and Thorslund failed to respond to his repeated requests to sign and return to him the appropriate paperwork for filing. While TCI's corporate documents were amended to reflect Simpson's 50 percent ownership stake in TCI, no shares in the new company were ever issued to Simpson or to any other person, excepting those already held by Thorslund.
¶ 6 In May 2003, Thorslund transferred all of NHI's assets, including $91,254 in accounts receivable to TCI. Simpson contributed only his labor to TCI as capital. Simpson and Thorslund agreed that TCI would make $5,000 monthly payments to NHI, variously characterized as either consulting fees or *472 loans. These funds were to be used to satisfy NHI's outstanding debt obligations. At trial, Simpson testified he was led to believe that when he became a co-owner of TCI, performing essentially the same work for a much lower salary than he had as an NHI employee, he would share in TCI's expected future profits. He further testified that he was made to understand he would be repaid by TCI for the $50,000 loan (plus interest) that he had made to NHI and Thorslund in 2000.
¶ 7 Thorslund remained in control of TCI's finances at all times. The $5,000 consulting payments were insufficient to meet NHI's outstanding obligations. As a result, Thorslund began to draw funds from TCI to pay NHI's debts, classifying those withdrawals as shareholder loans or draws. Thorslund treated TCI's accounts as his own personal accounts taking out large draws for family purposes, such as vacations and private school tuition. Simpson, on the other hand, was drawing a reduced salary and living off his personal savings account. Simpson testified that Thorslund was mishandling the money though he was not aware of this misfeasance for quite some time. Simpson claims that when he confronted Thorslund about unexplained missing sums in TCI's financial records, Thorslund questioned Simpson's friendship.
¶ 8 By 2005, TCI was failing, had essentially ceased all business operations, and by 2006 was insolvent. In April 2006, Simpson sued Thorslund for monies owed alleging multiple theories of recovery including breach of fiduciary duty, fraud, negligent misrepresentation, conversion, breach of contract, unjust enrichment, and non-payment of wages. Simpson further alleged that Thorslund had failed to observe requisite corporate formalities and was thus personally liable for both TCI's and NHI's debts. Neither Simpson nor Thorslund ever requested a full partnership accounting to determine the partnership's net assets and liabilities and none was ever undertaken.
¶ 9 A bench trial was held in December 2007. In March 2008, the court entered judgment in favor of Simpson, also awarding him attorney fees and costs. The trial court denied both parties' subsequent motions for reconsideration. Thorslund timely appeals.

ANALYSIS

Partnership Accounting
¶ 10 Thorslund's primary argument on appeal is that the entry of judgment in favor of Simpson by the trial court was premature and improper, because there was never a full partnership accounting of TCI's assets and liabilities. Such an accounting was required under the common law and was a precondition to an action between partners, including de facto partners.[2] Since the adoption of RUPA in 1998, however, Washington law no longer requires such an accounting.[3]
¶ 11 A partnership is formed by "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership."[4] Simpson and Thorslund formed a partnership when their attempt to form a corporation failed. Further, neither party contends the trial court erred in finding that Simpson and Thorslund were de facto partners.[5]
¶ 12 In Washington, the operation of partnerships and the rights and obligations of a partnership's individual members are expressly governed by statute.[6] RUPA expressly *473 superseded the common law governing partnerships.[7]
¶ 13 Prior to the adoption of RUPA, a partner was generally barred from bringing suit against a former co-partner regarding partnership liabilities without first bringing an action to account for and settle the partnership's affairs.[8] Thorslund contends that the common law accounting requirement is still applicable and further argues that RUPA requires one, citing the following the provisions:
A partner may maintain an action against the partnership or another partner for legal or equitable relief, with or without an accounting as to partnership business, to:
(a) Enforce the partner's rights under the partnership agreement;
(b) Enforce the partner's rights under this chapter, including:
(i) The partner's rights under RCW 25.05.150, 25.05.160, or 25.05.165;
(ii) The partner's right on dissociation to have the partner's interest in the partnership purchased pursuant to RCW 25.05.250 or enforce any other right under article 6 or 7 of this chapter; or
(iii) The partner's right to compel a dissolution and winding up of the partnership business under RCW 25.05.300 or enforce any other right under article 8 of this chapter; or
(c) Enforce the rights and otherwise protect the interests of the partner, including rights and interests arising independently of the partnership relationship.
(3) The accrual of, and any time limitation on, a right of action for a remedy under this section is governed by other law. A right to an accounting upon a dissolution and winding up does not revive a claim barred by law.[[9]]
And RCW 25.05.150 states, in relevant part:
(1) Each partner is deemed to have an account that is:
(a) Credited with an amount equal to the money plus the value of any other property, net of the amount of any liabilities, the partner contributes to the partnership and the partner's share of the partnership profits; and
(b) Charged with an amount equal to the money plus the value of any other property, net of the amount of any liabilities, distributed by the partnership to the partner and the partner's share of the partnership losses.
(2) Each partner is entitled to an equal share of the partnership profits and is chargeable with a share of the partnership losses in proportion to the partner's share of the profits.
And, finally, RCW 25.05.330 provides:
(1) In winding up a partnership's business, the assets of the partnership, including the contributions of the partners required by this section, must be applied to discharge its obligations to creditors, including, to the extent permitted by law, partners who are creditors. Any surplus must be applied to pay in cash the net amount distributable to partners in accordance with their right to distributions under subsection (2) of this section.
(2) Each partner is entitled to a settlement of all partnership accounts upon winding up the partnership business. In settling accounts among the partners, profits and losses that result from the liquidation of the partnership assets must be credited and charged to the partners' accounts. The partnership shall make a distribution to a partner in an amount equal to any excess of the credits over the charges in the partner's account. A partner *474 shall contribute to the partnership an amount equal to any excess of the charges over the credits in the partner's account, except, in the case of a limited liability partnership the partner shall make such contribution only to the extent of his or her share of any unpaid partnership obligations for which the partner has personal liability under RCW 25.05.125.
(3) If a partner fails to contribute the full amount required under subsection (2) of this section, all of the other partners shall contribute, in the proportions in which those partners share partnership losses, the additional amount necessary to satisfy the partnership obligations for which they are personally liable under RCW 25.05.125. A partner or partner's legal representative may recover from the other partners any contributions the partner makes to the extent the amount contributed exceeds that partner's share of the partnership obligations for which the partner is personally liable under RCW 25.05.125.
(4) After the settlement of accounts, each partner shall contribute, in the proportion in which the partner shares partnership losses, the amount necessary to satisfy partnership obligations that were not known at the time of the settlement and for which the partner is personally liable under RCW 25.05.125.
While these provisions do not expressly foreclose a full partnership accounting, there is nothing to indicate that such an accounting is a prerequisite to filing suit against a co-partner. Further, a settlement of accounts when winding up a partnership under RCW 25.05.330, though perhaps similar in outcome, is not the functional equivalent of the accounting requirement prior to Washington's adoption of RUPA.
¶ 14 Although no court in Washington has previously addressed the question of whether a partnership accounting is a prerequisite to an action between partners, the majority of jurisdictions that have similarly adopted partnership acts based on RUPA have answered in the negative.[10] This view is in accord with the overall statutory scheme of RUPA and its grant of broad discretion to courts to fashion remedies in suits between partners. Here, no partnership accounting was required and the trial court did not err in entering judgment in favor of Simpson without one.

Sufficiency of the Evidence
¶ 15 Thorslund contends the evidence was insufficient to support Simpson's claims and that the trial court applied the wrong legal standard in supporting some of those claims.[11] Because Simpson and Thorslund were de facto partners, the trial court found there was a fiduciary duty between them and that Thorslund breached that duty by misappropriating corporate funds to his own use in derogation of his partner's rights. The court also found that there was a breach of the oral contract between the parties to jointly operate the business and to share in whatever profits existed after expenses. The trial court further found that Thorslund converted assets and funds of the company against the interest of Simpson resulting in an unjust enrichment to Thorslund. These findings were supported by substantial evidence in the record.
¶ 16 With regard to unpaid wages, the record demonstrated that a balance of $8,058 was owed Simpson for wages at NHI. The trial court imposed double damages under RCW 49.52.050(2) totaling $16,116 and further imposed a 12 percent interest on the *475 indebtedness from April 2003 which amounted to $25,140.96.
¶ 17 The court also found that there was an unpaid loan balance of $17,500 from the $50,000 that Simpson loaned Thorslund. This was substantiated by Thorslund's own testimony. Awarding prejudgment interest at 12 percent brought the outstanding loan balance to $52,440.96.
¶ 18 At TCI, the trial court found that Simpson was entitled to funds for his unreimbursed expenses that were documented during the trial which included a $7,000 bill for his Home Depot contract and $6,000 that Simpson paid for a surety bond, for a total of $13,000 plus 12 percent interest bringing the amount to $16,120.
¶ 19 In determining the unpaid share of revenue from TCI, the court relied on the report of the forensic accountants, Smith & Company, LLC, in determining the final amounts owed Simpson. But the court did not rely solely on that report as can be seen by the trial court's offset of Smith's unpaid share of revenue by $35,000 in favor of Thorslund for monies and expenses incurred in operating the business. The trial court found the total of revenue to be $477,585, one-half of which Simpson is entitled to. That amount was also to be augmented by the appropriate amount of prejudgment interest.
¶ 20 Thorslund objects to the trial court's reliance on CPA Donald Smith's testimony and his QuickBooks TCI financial records admitted at trial. Thorslund's objections, however, relate to matters of credibility and such is the preserve of the fact-finder alone.[12] We will not substitute our judgment for that of the trial court. The trial court had the opportunity to evaluate Smith when he testified at trial and to consider any timely objections to Smith's testimony or his report at that time. Likewise, the trial court had the same opportunity with regard to Thorslund's expert witness, CPA Richard Ginnis.[13] The record is replete with examples of Thorslund using company funds for his own personal use. The trial court's decision is more than adequately supported by the record from the five day trial and we will not second guess the trial court's determinations as to the credibility of witnesses and the persuasiveness of the evidence presented at trial.
¶ 21 Thorslund contends RUPA precludes one partner from bringing a conversion action against a co-partner, rather than on behalf of the partnership. Nothing in RUPA, however, forecloses an action for conversion. The applicability of RUPA does not obviate a partner's duties to comply with other laws, including those proscribing conversion. The evidence shows that Thorslund, who controlled TCI's finances, made numerous, questionable loans to himself from TCI. Thorslund used some of these funds for entirely personal uses, such as private school tuition and vacations. Additionally, he used some of the funds toward paying down NHI's outstanding debts. His conduct demonstrated little or no regard for corporate formalities whatsoever and Thorslund was essentially the alter ego to the partnership (TCI or NHI).

Prejudgment Interest
¶ 22 Thorslund contends the trial court erred in granting Simpson prejudgment interest. We review an award of prejudgment interest for an abuse of discretion.[14] "Prejudgment interest awards are based on the principle that a defendant `who retains money which he ought to pay to another should be charged interest upon it.'"[15] "The plaintiff should be compensated for the `use value' of the money representing his damages for the period of time from his loss to the date of judgment."[16] Usually, *476 such compensation is liquidated, meaning that "`the amount at issue can be calculated with precision and without reliance on opinion or discretion.'"[17] But, a claim need not be actually liquidated so long as it is "`determinable by computation with reference to a fixed standard'" and calculated without reliance on opinion or discretion (i.e., judgment).[18] Such is the case here.

Attorney Fees and Costs
¶ 23 The trial court's award of attorney fees is supported on three distinct grounds. First, because Thorslund's conduct was so egregious and persistent in violating his fiduciary duties, the equities justify the court's award.[19] Second, attorney fees were warranted as a discovery sanction under CR 37(c) because Thorslund's refusal to make certain admissions when requested, led to substantial additional and unnecessary litigation costs.[20] And finally, because Simpson was successful in his wage claim, he is entitled to an award of attorney fees under chapter 49.52 RCW. Any one of those reasons serves as grounds for an award of fees for work performed on all of Simpson's successful claims. Here, the facts underlying the multiple claims are so intertwined that the related fees cannot feasibly be segregated. An award of attorney fees is a matter within the discretion of the trial court.[21] Under these circumstances, we find no abuse of that discretion.
¶ 24 Thorslund also appeals the award of costs to Simpson. The award, however, was consistent with RCW 4.84.010, which specifies the costs to which a prevailing party is entitled. The record contains sufficient evidence to support the trial court's calculation and award of costs, and we find no abuse by the trial court of its power of discretion.

Attorney Fees on Appeal
¶ 25 Simpson argues that Thorslund's appeal is frivolous and that he is entitled to attorney fees under RAP 18.9. Thorslund's appeal, however, is not so completely devoid of merit as to warrant an award of attorney fees on appeal. Therefore, Simpson's request for attorney fees on appeal is denied.
¶ 26 For the reasons stated above, the trial court is affirmed.
WE CONCUR: SCHINDLER, C.J., and LAU, J.
NOTES
[1] Chapter 25.05 RCW (effective Jan. 1, 1999). The legislature adopted RUPA in 1998 (Laws of 1998, ch. 103). RUPA replaced the Uniform Partnership Act (UPA), which had been in effect in this state since 1945 (Laws of 1945, ch. 137).
[2] See Blanchard v. Energy Associates Northwest, 43 Wash.App. 716, 719, 718 P.2d 803 (1986).
[3] See generally Title 25 RCW (effective Jan. 1, 1999).
[4] RCW 25.05.055 (emphasis added); Bengston v. Shain, 42 Wash.2d 404, 409, 255 P.2d 892 (1953) (the existence of a partnership may be implied from the circumstances); see also Curley Elec., Inc. v. Bills, 130 Wash.App. 114, 121 P.3d 106 (2005).
[5] State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994) (unchallenged findings are verities on appeal).
[6] See generally Title 25 RCW; see also RCW 25.05.150, .170; Guntle v. Barnett, 73 Wash.App. 825, 833, 871 P.2d 627 (1994) ("[S]ince 1945 [a court's] `equitable powers' have been subject to partnership statutes.").
[7] RCW 25.05.015(1) ("To the extent the partnership agreement does not otherwise provide, this chapter governs relations among the partners and between the partners and the partnership."); see also RCW 25.05.020(1) ("Unless displaced by particular provisions of this chapter, the principles of law and equity supplement this chapter.").
[8] See Pollock v. Ralston, 5 Wash.2d 36, 41, 104 P.2d 934 (1940).
[9] RCW 25.05.170; see also RCW 25.05.150, .160,.165.
[10] Alan R. Bomberg and Larry E. Ribstein, Bromberg and Ribstein on Partnership, Vol. 3, § 6.07(i), 6:162.1 (Supp.2002); see, e.g., Thompson v. Coughlin, 329 Or. 630, 636-37, 997 P.2d 191 (2000); Berry v. Ostrom, 144 Idaho 458, 163 P.3d 247 (2007).
[11] The trial court found there was no clear, cogent and convincing evidence to determine that Thorslund had the intent to commit fraud from the onset of the business venture and thus found no basis for Simpson's claim on fraud. There is also a written conclusion that implies the trial court found negligent misrepresentation without a concomitant finding of clear, cogent and convincing evidence to support such a finding. But because there are multiple grounds on which to support the trial court's findings, we need not rely on either the fraud or negligent misrepresentation theories.
[12] Weyerhaeuser v. Tacoma-Pierce County Health Dep't, 123 Wash.App. 59, 65, 96 P.3d 460 (2004).
[13] Weyerhaeuser, 123 Wash.App. at 65, 96 P.3d 460 (noting appellate court must defer to the trial court's decisions regarding conflicting evidence).
[14] Crest Inc. v. Costco Wholesale Corp., 128 Wash.App. 760, 775, 115 P.3d 349 (2005).
[15] Hansen v. Rothaus, 107 Wash.2d 468, 473, 730 P.2d 662 (1986) (quoting Prier v. Refrigeration Eng'g Co., 74 Wash.2d 25, 34, 442 P.2d 621 (1968)).
[16] Hansen, 107 Wash.2d at 473, 730 P.2d 662 (citing Mall Tool Co. v. Far West Equip. Co., 45 Wash.2d 158, 273 P.2d 652 (1954)).
[17] Crest Inc., 128 Wash.App. at 775, 115 P.3d 349 (quoting Mahler v. Szucs, 135 Wash.2d 398, 429, 957 P.2d 632 (1998)).
[18] Hadley v. Maxwell, 120 Wash.App. 137, 141-42, 84 P.3d 286 (2004) (quoting Lakes v. Von Der Mehden, 117 Wash.App. 212, 217, 70 P.3d 154 (2003)).
[19] See Green v. McAllister, 103 Wash.App. 452, 468-69, 14 P.3d 795 (2000).
[20] CR 37.
[21] Guntle, 73 Wash.App. at 826-37, 871 P.2d 627.