[No. 20532. Department Two.   June 27, 1927.]

HOTEL RANDOLPH COMPANY, *Appellant,* v. JOHN C. WATROUS COMPANY, *Respondent.*[1]

[1] ACCORD AND SATISFACTION (3)—PART PAYMENT — UNLIQUIDATED CLAIMS—ACCEPTANCE OF CHECK. There was a complete accord and satisfaction where, upon closing a deal, a statement of a final debit was made, in a certain sum, with "check to balance" in the amount, and the check, after being held for a time on account of a claimed offset, was finally cashed, with full notice of the offset; since the whole debt was unliquidated by reason of the offset.

[2] SAME (7)—EXECUTION—EFFECT. After accord and satisfaction, the defense of the statute of frauds or other defenses on the merits to the items originally in dispute are foreclosed.

Appeal from a judgment of the superior court for King county, Ralston, J., entered September 22, 1926,

[1]Reported in 257 Pac. 629.

upon findings in favor of the defendant, in an action
for money had and received. Affirmed.

*E. C. Million* and *J. L. Corrigan,* for appellant.

*D. V. Halverstadt, Jno. J. O'Brien,* and *James W.
McBurney,* for respondent.

Tolman, J.—This is an appeal by the plaintiff from
a judgment dismissing its action. Appellant sought
to recover judgment for five hundred dollars, collected
as rental for it by respondent, acting as agent for the
collection of rents, and alleged to have been unlaw-
fully retained. The defense was accord and satisfac-
tion growing out of the following: At the request of
appellant, the respondent sought a purchaser for cer-
tain real property and found one who offered to pay
$109,000 on certain specified terms and conditions, and
who deposited with the agent a check for $5,000 as
earnest money. An earnest money receipt was pre-
pared by respondent, reciting the terms of the pro-
posed sale, which provided that it should become
effective only when approved by the appellant as the
owner of the property.

For some time, appellant, although frequently re-
quested, failed to approve or disapprove, and the
prospective purchaser finally demanded the return
of the $5,000 check. When this was made known to
an officer of the appellant company who had power
to act in such matters, he, according to the testi-
mony offered by respondent, made known that he
had a better prospect for a sale in sight, and if the
check were held on deposit, that fact would be an
argument helpful in closing the better sale; and, ac-
cording to respondent's witnesses, appellant, through
the officer referred to, told them that, if they would
persuade their prospect to keep the check up on de-
posit, appellant would, if a sale was made to its

prospect, pay them five hundred dollars for their services in keeping the first offer alive, and that they might charge the five hundred dollars, when so earned, against the rents collected and in their hands.

The evidence indicates that appellant closed the sale to its purchaser on July 31, 1922, and on August 1 following, respondent made up a statement of rents collected, amounting to $975, against which it charged certain disbursements, not questioned, and also this fee for services in the sum of five hundred dollars; the final debit to appellant on the statement being ''check to balance, $285.55,'' and sent both statement and check to the appellant. The check was not immediately cashed, and nothing was done for some little time. Later (there being some dispute as to how much later), an attorney representing appellant called at respondent's office, saying that he had come to inquire into the ''mix-up'' and straighten it out, if possible; and thereupon, according to respondent's witnesses, he was told of what had occurred, substantially as we have set it forth.

The attorney testified that nothing was said of any agreement to pay the five hundred dollars, but that respondent's officers claimed that five hundred dollars was due, because they had earned it and because it was just and fair that they should be so paid. That is the only testimony in the case tending to a denial of the claimed agreement; but, as we see it, on the question of accord and satisfaction; it is immaterial whether the offset was claimed by virtue of an agreement or because it was just and fair. The attorney promised to report to appellant respondent's version of the situation, and presumably did so. He later saw respondent's officers, at least once more and perhaps several times, but nothing looking toward any change in the situation was accomplished. In October, 1923,

this action was commenced, and shortly thereafter appellant cashed the check and has since retained the proceeds.

[1] The appellant seems to take the position that, because admittedly the whole amount for which the check was drawn was due to it, there was no accord and satisfaction, and cites cases to the effect that, where the amount due is not in dispute, an acceptance of a sum less than the whole amount will not be a bar to the recovery of the balance. The case of *London Guaranty & Accident Co. v. Western Smelting & Power Co.*, 117 Wash. 568, 201 Pac. 914, is easily distinguishable on the facts. *Ingram v. Sauset*, 121 Wash. 444, 209 Pac. 699, while more nearly parallel, can still be distinguished upon the ground that here, after investigation by its attorney and knowledge that respondent claimed the check to be in full settlement, a meeting of the minds may be seen in the final cashing of the check.

We think this case is governed by the rule laid down in *First Nat. Bank of Ritzville v. White-Dulaney Co.*, 123 Wash. 220, 212 Pac. 262. In that case, on facts very similar to those in this case, the court, after recognizing the general rule applicable to debts which are liquidated and due, deliberately adopted the majority rule to the effect that a claimed offset in dispute will render the whole debt unliquidated. So here, appellant was well advised, before it cashed the check, of the claimed offset, and being a party to the dispute well knew it existed, and, we think, to hold that there was no accord and satisfaction here would be to, in effect, overrule the *White-Dulaney* case, which we are unwilling to do.

[2] This disposition of the main question makes it unnecessary to consider the other questions raised; for, after accord and satisfaction, one may not raise the

defense of the statute of frauds or any defense on the merits to the items which were originally in dispute. That is fundamental; otherwise accord and satisfaction would be a poor defense indeed.   12 C. J. 329.

The judgment of the trial court is affirmed.

MACKINTOSH, C. J., FRENCH, and PARKER, JJ., concur.