[No. 31193. Department One. November 2, 1950.]

BEN BERLINER, *Respondent*, v. JACOB L. GREENBERG, *Appellant*.[1]

[1]Reported in 223 P. (2d) 598.

*Rombauer, Franco & Asia*, for appellant.
*Dodd & Russell*, for respondent.

BEALS, J.—The parties to this action, Ben Berliner, plaintiff, and Jacob L. Greenberg, defendant, are brothers-in-law, the defendant having married the plaintiff's sister. In his complaint, filed October.7, 1948, the plaintiff alleged that in January, 1947, he commenced doing business as a sole trader under the name of Seattle Textile Company, and that,

in March following, plaintiff and defendant, by an oral agreement, formed a partnership, under the name above mentioned, for the purpose of conducting a wholesale textile business, the defendant acting as office manager.

Plaintiff further alleged that defendant was to receive one hundred dollars a week; that the net proceeds were to be divided equally between the partners, plaintiff furnishing a large amount of capital and using his credit in connection with purchases; that for some time prior to the filing of the complaint there had been friction between the partners, and that defendant had refused to consent to an audit of the books or to render statements of the extensive partnership business.

Plaintiff prayed that an accounting be had concerning the partnership affairs; that the business be closed, and that a receiver be appointed.

After certain preliminary hearings, an order was entered October 15, 1948, declaring that the partnership

". . . be and is hereby dissolved at least as of the present date without prejudice to the rights of either party as to the possibility of prior dissolution having been effected, the Court specially reserving the determination of any prior date of dissolution for determination at a subsequent date on call."

The order further directed that the business of the partnership be audited; that the defendant be restrained from incurring further indebtedness on behalf of the partnership, and that the partnership business be liquidated in an orderly manner.

January 17, 1949, the defendant filed his answer to the complaint, denying the allegations thereof and, by way of an affirmative defense, alleging that, in October, 1946, the parties entered into an oral agreement of partnership, under the firm name of Seattle Textile Sales (later changed to Seattle Textile Company); that, by the agreement, plaintiff was to furnish all necessary capital to carry on the business; that defendant was to devote his entire time to the management thereof; that the defendant was to receive one half of the profits earned by the business; that, June 30, 1948, the

parties agreed to dissolve the partnership effective as of that date, and that plaintiff agreed to retire from the business upon return to him of his investment, plus one half of any undistributed net profits which had accrued up to the date mentioned.

Defendant alleged that an accounting was to be had; that he delivered to plaintiff all of the books and records of the partnership for the purpose of having an accounting made; that the accounting was prepared and a copy thereof delivered to defendant August 26, 1948, accompanied by a letter from plaintiff's wife, "who was then acting for and on behalf of the plaintiff in the dissolution of the partnership"; that, during the month of July, 1948, plaintiff had received from the capital of the business twenty-five thousand dollars; that any further amount due plaintiff was to be paid "at such time as defendant would be able to pay same without jeopardizing his business"; and that plaintiff also agreed that he would continue to sign partnership checks and notes with defendant to protect plaintiff's investment.

Defendant also alleged that, when he received the accounting, he offered to return to plaintiff the balance of his investment, and that plaintiff "advised defendant that he did not need the money and that it could be paid at a later date, to which defendant acceded."

The answer further alleged that, with the assistance of Mrs. Berliner, the partnership books were closed as of June 30, 1948, and new books opened showing defendant as sole owner of the business, and that plaintiff was entitled to receive not more than $10,235.01.

By way of a cross-complaint, defendant prayed that plaintiff be required to render an accounting; that the action be dismissed, and that a decree be entered declaring that the partnership was dissolved as of June 30, 1948.

Plaintiff replied, denying the affirmative allegations of the answer and cross-complaint and demanding judgment as prayed for in his complaint.

After trial, the court rendered a comprehensive oral opinion, April 27, 1949, discussing the testimony and stating

the court's view that, while there had been a tentative agreement to dissolve the partnership as of June 30, 1948, the agreement had never been consummated; that plaintiff's name and credit were still used after that date, and that the court would consider the partnership dissolved as of October 14, 1948, instead of on the prior date. After considering certain specific items, the matter was continued.

April 28, 1949, the court denied defendant's motion for judgment in his favor notwithstanding the oral decision of the court, and, May 27th following, entered a decree reciting the formation of the partnership during the month of March, 1947; that plaintiff supplied all of the original capital, and that the partners were to share the profits and losses equally, the defendant to be allowed a drawing account for his services. The decree then referred to the order entered October 14, 1948, *supra*, and stated that an audit of the business affairs of the partnership had been made, and that most of the partnership debts had been paid, save the charge for the audit, which was approved. The decree further stated the court's conclusion:

". . . that no effective dissolution of the partnership and no winding up of the affairs thereof had been accomplished prior to October 14, 1948; and, further, that since said date the defendant has been conducting business under the firm name and style 'Seattle Textile Company' at the same address as the former partnership; and has been using the partnership assets in said business."

The decree then found that, as of October 14, 1948, the partnership assets amounted to over ninety-nine thousand dollars and the liabilities to something over forty-nine thousand dollars, and that "the net capital of the plaintiff was the amount of $20,674.79 and the net capital of the defendant was the amount of $29,298.44."

The court adjudged and decreed that the partnership was dissolved October 14, 1948, by the court's order; that plaintiff was entitled to receive from the assets of the partnership the sum of $20,674.79, with interest from October 14, 1948; that certain partnership obligations were to be paid; that the assets and bank account of the business should continue to

be subject to the joint control of the parties; that they should proceed with diligence to close the partnership in due course, and that an interim report be filed by the defendant on or before July 18, 1949. The defendant's cross-complaint was then dismissed with prejudice.

From the decree above referred to, the defendant has appealed, making the following assignments of error:

"(1) The Trial Court erred in holding that there was no dissolution of partnership effective June 30, 1948.

"(2) The Trial Court erred in holding that there was not a settlement of accounts as between the partners as of June 30, 1948, fixing the amount to which respondent, as withdrawing partner, was entitled.

"(3) The Trial Court erred in holding that the partnership was not dissolved and the rights of the partners determined until the entry of the Order of Dissolution of October 14, 1948.

"(4) The Trial Court erred in admitting into evidence plaintiff's exhibits 15 and 16.

"(5) The Trial Court erred in refusing to admit defendant's exhibits 38 and 39 and in striking the testimony relating to such exhibits.

"(6) The Trial Court erred in failing to include in the accounting, the profits made by plaintiff-respondent on war surplus bids obtained in the name of the partnership.

"(7) The Trial Court erred in granting the plaintiff-respondent interest on his share of the partnership assets, from the date of dissolution as found by the court."

It should be noted that, although the trial court, in its oral decision and in the decree appealed from, repeatedly referred to the effective date of its order dissolving the partnership as October 14, 1948, that order was actually signed by the court and filed October 15, 1948. It is probable that, after a hearing and argument, the court announced its ruling October 14th, which was embodied in a formal order signed and filed the following day.

From the evidence introduced, it appears that, during the spring of 1946, respondent engaged in business as a dealer in war surplus materials and, later, in textiles, under the trade name of Textile Sales.

In October, 1946, respondent and appellant met in New York City, where the latter was completing his education. The formation of a partnership was discussed, evidently conditioned upon appellant's marriage to respondent's sister. The marriage took place in December following, at which time appellant presented to respondent a proposed partnership agreement, which was not satisfactory to respondent. In February, 1947, respondent's wife visited New York and submitted to appellant a proposed contract which respondent had had prepared, but that contract was not satisfactory to appellant.

However, during the spring of 1947, the two men formed a partnership pursuant to an oral agreement, and appellant moved to Seattle, where the partnership began to operate under the trade name of Seattle Textile Company. The men were equal partners, respondent to furnish the capital and appellant to devote his time to managing the business, for which he was to receive a salary.

Respondent furnished the original capital used by the partnership, but, not long thereafter, a capital account was established by appellant with a personal loan of twenty-five hundred dollars advanced by respondent. From undistributed profits and other sources, by October, 1948, appellant's capital account amounted to over twenty-nine thousand dollars.

After the partnership had been in existence about twelve months, each partner became dissatisfied with the other. Appellant objected to respondent's manner of dealing with customers, and respondent disapproved of appellant's method of accounting in connection with cash sales. There were also other dissensions. The partners' differences culminated in a heated argument in April, 1948, and, thereafter, their relations were strained, a dissolution of the partnership was discussed, and preparatory steps were taken toward that end.

During the latter part of April, an inventory was taken, and journal entries for closing the partnership books were prepared, but were never entered.

It appears that the partnership had purchased largely from a business referred to as "Spring Mills," and, upon being advised of the proposed dissolution of the partnership, that concern withdrew the line of credit which it had extended. Late in May, the company referred to was informed that respondent would not withdraw from the partnership, whereupon the credit line was re-established, Spring Mills stating in its letter that it considered respondent "as the mainstay in this partnership," and also requesting that it be promptly notified in case respondent should, in the future, withdraw from the partnership.

Appellant testified at considerable length concerning conversations between respondent and himself regarding a dissolution of the partnership, which took place about the middle of July, 1948. He testified that the matter was discussed between the two men and a dissolution agreed upon, to be considered as having been made on June 30th.

From the record before us, it is impossible to determine what the essential elements of this agreement (if one was made) were. We have carefully examined the evidence in connection with this phase of the case, and hold that the record does not support appellant's contention that an agreement to dissolve the partnership as of June 30, 1948, was entered into by the parties. Certainly, the matter was discussed at length, but the minds of the partners never met upon any definite agreement.

It appears beyond question that there was no change in the conduct of the business as the result of any discussions between the partners. Respondent continued to sign partnership checks with appellant, and attended at the office. Late in July, respondent went to Chicago and purchased considerable merchandise which he, thereafter, in the name of the firm, sold to the state of Washington for approximately ten thousand dollars. September 2nd following, respondent and appellant signed a note at the bank in the name of Seattle Textile Company, the firm using the proceeds of the note for partnership obligations.

An accountant was employed to prepare statements of the partnership's financial standing as of June 30, 1948, but no closing entries were made ending the partnership accounts. During the months of August and September, appellant submitted certain of these financial statements to persons with whom the firm was dealing and who had requested such statements, but he made no reference in any of these communications to a proposed dissolution of the partnership.

The trouble between the partners continued, and, September 30, 1948, appellant submitted to respondent (by delivering it to Mrs. Berliner) a written outline of a plan to change the partnership agreement, which had been prepared by appellant's counsel. This proposed agreement was introduced in evidence and refers to the earlier discussion between the parties as a "tentative agreement whereby the partnership was going to be dissolved effective June 30, 1948," continuing: "Although it was the intention of the parties at that time to dissolve the partnership the parties have since determined that it will be mutually advantageous to them to remain in business together." Shortly after receiving this proposed agreement, respondent instituted this action.

June 28, 1948, appellant, on behalf of the partnership, entered into a contract by which the partnership was to sell twenty-five thousand dollars' worth of fireproof glass curtains. Appellant argues that, because of the time limit on this contract and because of the supposed small margin of profit, respondent became anxious to withdraw from the firm. From the evidence, it appears that the contract was quite profitable.

Appellant also argues that the fact that, during the month of July, respondent received money from the firm aggregating about twenty-five thousand dollars indicates that respondent did, at that time, regard the partnership as dissolved. Respondent, on the other hand, testified that the money which he received was for the purpose of endeavoring to equalize the capital investments of the partners.

Appellant's first three assignments of error are general in their nature and will be referred to later.

Pursuant to assignment of error No. 4, appellant argues that the trial court erred in admitting in evidence respondent's exhibits Nos. 15 and 16.

It appears that, in September, 1948, appellant and Mrs. Berliner met and discussed the questions pending between the partners. Soon thereafter, Mrs. Berliner wrote a pencil memorandum in the form of an agreement between the partners, which was admitted as respondent's exhibit No. 16. From the evidence, it appears that Mrs. Berliner had no authority whatever from respondent to make any agreement of settlement with appellant. The agreement is unsigned and, in determining the questions presented, we disregard it.

A few days after the meeting between appellant and Mrs. Berliner, appellant's counsel prepared a proposed agreement, *supra*, which was submitted to respondent, who countered by instituting this action. This agreement was admitted as respondent's exhibit No. 15. Appellant argues that this exhibit was improperly admitted in evidence, having been prepared in connection with an attempt to compromise existing disagreements between the partners and by way of an offer to "buy peace."

It is true that attempts by parties to adjust their differences are recognized by courts as praiseworthy endeavors to avoid litigation, and that admissions or failure to controvert matters in dispute cannot later be used against a party, if the effort to compromise is unsuccessful. An exception to the above rule was recognized by this court in the case of *Ingraham v. Associated Oil Co.*, 166 Wash. 305, 313, 6 P. (2d) 645, where we said:

"Where, however, distinct facts are admitted during the progress of the negotiations, they are regarded as statements of independent facts and are admissible against the party making them."

The case of *Romano Engineering Corp. v. State*, 8 Wn. (2d) 670, 113 P. (2d) 549, is to the same effect, although the matter considered in that case differed materially from the question here presented.

■ The fact that, late in September, 1948, appellant's counsel prepared an agreement of settlement which was submitted to respondent, referring to the discussions between the parties in June of that year as "a tentative agreement whereby the partnership was going to be dissolved effective June 30, 1948," appellant to become sole owner of the business, upon payment to respondent of his capital investment, could properly be considered by the trial court in connection with the entire agreement, in so far as relevant. This evidence should not be held determinative of any question, but merely considered in connection with all other evidence before the court. The recital above quoted from the proposed agreement is certainly a statement of an independent fact, and it was no portion of any proposed compromise of the questions pending between the partners.

Appellant's fourth assignment of error is without merit.

By assignment of error No. 5, appellant argues that the trial court erred in striking appellant's exhibits Nos. 38 and 39, and the testimony relating thereto.

It appears that, in October, following the discussions last above referred to, respondent and appellant again discussed the matter of compromising their difficulties. Apparently, they tentatively reached some common basis, with the result that, October 14, 1948, respondent drew his check for two thousand dollars, payable to appellant's order, and delivered the same to appellant. Thereafter, just when we do not know, respondent stopped payment upon this check. Appellant had endorsed the check, but, when it was presented for payment at the drawee bank, payment was refused because of respondent's act in stopping payment thereon. This check was admitted in evidence as appellant's exhibit No. 39.

Simultaneously with the offer of the check, appellant's exhibit No. 38, consisting of an unsigned agreement of settlement between the parties (which, it appears, was prepared by appellant's counsel), was admitted in evidence, and refers to the order of the superior court, entered October 15th, dissolving the partnership "at least as of that date."

From the evidence, it appears that respondent obtained a copy of this document from appellant's counsel. It is simply a proposed agreement adjusting the partners' differences, but contains no admission by either party pertinent to this appeal.

Thereafter, on respondent's motion, the trial court struck these exhibits from the record, together with all testimony concerning the same, upon the ground that the evidence received, including the exhibits, referred to an attempt by the parties to compromise their difficulties and, consequently, was not admissible upon the trial.

Appellant's own evidence indicates that respondent was endeavoring to "buy peace," by settling the controversy. Appellant testified:

"In the early part of October Mr. Berliner and I hammered out an agreement to wash this whole thing out of court, and Mr. Berliner told me that he was on the outs with his wife and was highly embarrassed by the whole matter."

The proposed agreement does not refer to the check. They are connected only by appellant's offer of proof and the testimony which the court struck.

Appellant contends that his acceptance of respondent's check completed and made effective an agreement between the parties to compromise their difficulties. This contention is not supported by the record. No definite terms of settlement were agreed upon. The proposed agreement is merely dated October —, 1948, and is not signed by either party.

Citing *Smith v. Telford,* 118 Wash. 502, 203 Pac. 938, 4 Nichols on Evidence 3347, and other authorities, appellant argues that exhibits Nos. 38 and 39, and the evidence received in connection therewith, do not concern an *attempted* compromise of the litigation, but, on the contrary, show that the parties actually *did make* a final agreement of settlement, basing his contention largely upon the delivery by respondent to appellant of the check. The brief statement in the case of *Smith v. Telford, supra,* does not expressly support appellant's contention.

■ To accomplish an accord and satisfaction of existing differences, the parties must complete a mutual agreement amounting to an accord, and also complete the agreed satisfaction.

In *LeDoux v. Seattle North Pac. Shipbuilding Co.,* 114 Wash. 632, 645, 195 Pac. 1006, we said:

"The general rule is that, where a debtor sends to his creditor a check for the amount he is willing to pay, and at that time informs the creditor that he intends the check to be considered as full payment, then, by the acceptance and *cashing of the check,* the creditor agrees to the settlement and cannot thereafter seek additional compensation." (Italics ours.)

In *Hotel Randolph Co. v. John C. Watrous Co.,* 144 Wash. 215, 218, 257 Pac. 629, 53 A. L. R. 766, this court held that, under the facts stated in the opinion, "a meeting of the minds may be seen in the final cashing of the check."

■ It is clear that the parties attempted to agree upon a settlement of their controversies. The agreement above referred to, prepared by appellant's counsel, contains several paragraphs concerning various matters in connection with the partnership business. From the record, no court could determine the terms of any complete compromise between parties. In order to have finally settled their differences, it must appear that there was *an accord* and *a satisfaction.* Clearly, after further consideration, appellant might have returned respondent's check and declined to complete any tentative agreement which the parties had considered. and, by the same token, respondent had the right to stop payment upon the check prior to the time it was presented for payment by appellant.

The evidence does not show the complete accomplishment of the two elements of accord and satisfaction, and would not support a finding that there was either an accord or a satisfaction. Appellant's assignment of error No. 5 is also without merit.

■ In support of his assignment of error No. 6, appellant argues that the trial court should have included in the accounting between the parties certain profits which accrued

to respondent on war surplus property, which he purchased on bids submitted in the name of the partnership.

Respondent engaged in the business of bidding on war surplus property on his own separate account, paying therefor with his personal funds, concerning all of which appellant was fully advised. It does not appear that, previous to making this assignment of error, appellant had ever asserted a claim to any share of profits accruing to respondent from such purchases. It further appears that, with respondent's knowledge, appellant also operated individually in some transactions, the profits of which accrued only to him.

We find no merit in this assignment.

By assignment of error No. 7, appellant contends that the trial court erred in allowing respondent interest on his share of the partnership assets from the date of the dissolution of the partnership by the court's order signed October 15, 1948.

The ruling of the trial court in this particular was in accord with Laws of 1945, chapter 137, §§ 42, 43, p. 371, Rem. Supp. 1945, §§ 9975-81, 9975-82, and appellant's assignment of error is without merit.

Appellant's first three assignments of error are answered in our general discussion of the questions presented, and are without merit.

The judgment appealed from is affirmed.

SIMPSON, C. J., GRADY, HILL, and DONWORTH, JJ., concur.