[No. 18526-5-III. Division Three. November 9, 2000.]

HARRY A. GREEN, ET AL., *Appellants*, v. K. DAVID MCALLISTER, *Individually and as General Partner*, ET AL., *Respondents*.

454

*William D. Symmes* and *Robert S. Magnuson* (of *Witherspoon, Kelley, Davenport & Toole, P.S.*) for appellants.

*Michael J. Casey*, for respondents.

SWEENEY, J. — This is a partnership dispute. Harry A. Green sued his former partners for breach of an agreement called a "Letter of Understanding." He claimed damages based on a breach of the agreement. Following a jury verdict in favor of Green, the court nonetheless ordered an unconditional remittitur. The first question before us is whether the jury's verdict is supported by the evidence. It is. The next question is whether the trial judge abused her discretion by ordering a remittitur without a finding that the verdict resulted from jury passion or prejudice. She did. We, accordingly, reverse that portion of the judgment. We also remand for further consideration of attorney fees based upon B.W.M. Investments' breach of its fiduciary duties to Green.

## FACTS

B.W.M. Investments is an Oregon general partnership composed of defendants A.E. Brim, James M. Williams, and K. David McAllister. Academy Investors is a Washington general partnership formed to hold title to and develop a parcel of real estate in Spokane, Washington—the real estate at issue. Brim, Williams and McAllister were general partners in both partnerships.

Harry Green agreed to buy 4.2 acres (282,000 square feet), formerly the Holy Names Academy, for $475,000 in May 1984. The parcel was zoned R-4D. R-4D zoning permits the construction of one unit of elderly housing per 1,000 square feet.

Phase I of the development would renovate the existing structure. Green obtained HUD financing, but was still short of capital. So he sought out other investors. Green sent Brim a proposal letter describing a project to be developed in phases in response to Brim's request for a written proposal. It said: "Gene Brim, or any group he involves, will be solely responsible to provide necessary cash for the acquisition and development of the project." Based on this letter, the defendants prepared a partnership agreement called the Letter of Understanding. Green would be the "lead developer" of the project and own 35 percent of each partnership.

B.W.M. loaned money to Academy Investors for payments on the note and operating expenses between September 1985 and August 1993.

One parcel, Parcel A, was transferred to a limited partnership called Academy Limited Partnership and developed as Phase I. Phase I was completed and is now the Academy Retirement Community. The rest was divided into Parcels B and C and transferred to another general partnership called Academy Investors. The partners were Green, Brim, Williams and McAllister.

Green began preliminary work on Phase II. An architect

submitted two sets of plans: one for a 182-unit development, and the other for a 215-unit project if Sharp Avenue could be vacated. The Spokane Parks Department agreed to vacate Sharp, which added another 33,696 square feet.

In June 1992, McAllister complained to Green that he was $41,395.81 in arrears on the B.W.M. operating loans to Academy Investors and demanded that Green come up with a plan to "solve this inequity."

In October 1992, Brim, Williams and McAllister (henceforth "the partners") had the property appraised. Bruce Jolicoeur appraised it at $273,000. McAllister noted in a memo to Williams and Brim that Jolicoeur had given no value to a 6,076 square-foot masonry structure called the "Old Gym." The partners did not send the appraisal to Green.

The partners issued a capital call for all partners to pay off the mortgage on Parcels B and C on July 22, 1993. Green's share was $33,600. The partners knew that Green was unlikely to find the money. Green did not find the money. The partners called a partnership meeting in Oregon on advice of counsel. They met and voted to liquidate the assets of Academy Investors. Green dissented.

Parcels B and C were the only remaining partnership assets. The partners voted, again 3 to 1, to sell the parcels to B.W.M. or its partners individually for Jolicoeur's appraised value—$273,000. Green objected that the land was worth more. He told them in writing that he considered their actions to be self-dealing and asked them to hold off until he talked to an attorney. On December 28, 1993, Academy Investors transferred title to B.W.M. without informing Green.

In December 1994, Green's appraiser valued the land at $674,600, plus another $203,000 for the Old Gym. The partners refused to discuss the matter further.

Green sued. He alleged that the Letter of Understanding was a contract which B.W.M. breached when it issued the capital call and thereby failed to continue to fund the

development of Parcels B and C. He alleged a second bad faith breach when the property was transferred to B.W.M. He also alleged breach of fiduciary duty and asked for an accounting.

Trial. The court held a single jury trial in March 1999. On the fair market value of the land—an equitable claim—the jury's verdict was advisory. The breach of contract claim was tried at law to the same jury.

Green showed that the contract called for a Phase I developer's fee of $300,000 to $500,000. Phase I included 100 units. Green presented testimony that Phase II could have been anywhere from 215 units up to 390 units, depending on whether Sharp Avenue was vacated. Thomas J. Meenach III, a professional real estate appraiser, testified that the market would bear a 390-unit development. Green's share of the developer's fees would have been 35 percent. The contract also called for Green to receive a construction management fee of $30,000 for Phase I.

Green presented evidence that all that remained to complete the vacation of Sharp Avenue was for two-thirds of the abutting property owners to consent. The three abutting owners included Academy Investors and B.W.M. B.W.M. argued that Green's damages must be based on no vacation of Sharp Avenue, because his adversaries in litigation would obviously not consent to the vacation.

Verdict. The jury returned a special verdict form. It determined that the land was worth $1,225,000 on the date the partnership was dissolved, and $1,547,500 at trial in 1999. It found that the Letter of Understanding was a contract and that the partners breached the contract, including their duty of good faith and fair dealing. The jury set damages for the breach at $785,000.

Judgment. In the accounting action, the court entered findings and conclusions and entered judgment for Green based on the date of dissolution value of $1,225,000. The judgment amount was 35 percent of $952,000 ($1,225,000 minus the $273,000 Jolicoeur estimate), or $333,200. The

court also awarded Green 12 percent prejudgment interest from the December 1993 dissolution to the May 1999 judgment, for an additional $214,708.60.

The court also entered findings, conclusions and judgment on breach of fiduciary duty. It concluded that the partners did not breach their fiduciary duty to Green. "Rather they acted on the advice of counsel pursuant to an irresolvable financial conflict with Mr. Green." The court then denied Green's request for attorney fees.

Posttrial Motions. B.W.M. moved for judgment notwithstanding the verdict, new trial, or remittitur on the contract claim on the grounds the evidence supported neither the existence of a contract nor the jury's damages award. The court denied both judgment notwithstanding the verdict and a new trial, but granted a remittitur, reducing the jury's contract damages from $785,000 to $205,000.

Green appeals the remittitur and denial of attorney fees for fiduciary breach. B.W.M. cross-appeals the amount of the accounting judgment, denial of its motion for judgment notwithstanding the verdict on breach of contract, and the award of prejudgment interest.

## ANALYSIS

### REMITTITUR

Green contends that the court can grant remittitur only by authority of RCW 4.76.030[1] which requires the option of a new trial. Here, the court found that the trial had been

---

[1] "If the trial court shall, upon a motion for new trial, find the damages awarded by a jury to be so excessive or inadequate as unmistakably to indicate that the amount thereof must have been the result of passion or prejudice, the trial court may order a new trial or may enter an order providing for a new trial unless the party adversely affected shall consent to a reduction . . . , of such verdict, and if such party shall file such consent and the opposite party shall thereafter appeal from the judgment entered, the party who shall have filed such consent shall not be bound thereby, but upon such appeal the court of appeals or the supreme court shall, without the necessity of a formal cross-appeal, review de novo the action of the trial court in requiring such reduction . . . , and there shall be a presumption that the amount of damages awarded by the verdict of the jury was correct and

fair, and that the jury's damage award was not the result of passion or prejudice. Green urges that the court was then without power to substitute its own judgment for the jury's on the amount of damages.

Green also argues that the jury award was well within the range of evidence. *Robinson v. Safeway Stores, Inc.*, 113 Wn.2d 154, 161-62, 776 P.2d 676 (1989). Specifically, Phase II would have encompassed 390 units. And a Phase II four times as large as Phase I would generate a proportionately larger developer's fee. Similarly, a Phase II construction fee of four times the $30,000 called for in Phase I is within the range of the evidence.

Green contends that the court's ruling usurped the jury's function and thereby violated Green's constitutional right to trial by jury.

B.W.M. responds that the verdict was outside the range of the evidence. And the court, accordingly, was well within its authority to *either* grant a new trial *or* reduce the amount of the award. *Mieske v. Pub. Util. Dist. No. 1*, 42 Wn.2d 871, 259 P.2d 647 (1953); *Wilcoxen v. City of Seattle*, 32 Wn.2d 734, 749, 203 P.2d 658 (1949); *Hill v. GTE Directories Sales Corp.*, 71 Wn. App. 132, 138-39, 856 P.2d 746 (1993); *Himango v. Prime Time Broad., Inc.*, 37 Wn. App. 259, 267-69, 680 P.2d 432 (1984).

 Standard of Review. We review the evidence de novo when a trial court reduces a verdict under RCW 4.76.030. The trial court has no discretion if the verdict is "within the range" of the credible evidence. *Hendrickson v. Konopaski*, 14 Wn. App. 390, 394-95, 541 P.2d 1001 (1975). We begin with the presumption that the jury's award of damages is correct. RCW 4.76.030; *Robinson*, 113 Wn.2d at 161.

The jury's verdict was advisory on the valuation of the

such amount shall prevail, unless the court of appeals or the supreme court shall find from the record that the damages awarded in such verdict by the jury were so excessive or so inadequate as unmistakably to indicate that the amount of the verdict must have been the result of passion or prejudice."

property. The court functioned in equity and therefore as the ultimate fact finder. The breach of contract claim, however, was put to the jury as a legal claim. Clerk's Papers (CP) at 335. The power of the court to reduce the damages is therefore limited by well established law.

 The court may grant a remittitur if the damages are so excessive as to manifestly have been the result of passion or prejudice, or if the verdict is unsupported by substantial evidence. RCW 4.76.030; *Hendrickson*, 14 Wn. App. at 394-95. Upon such a finding, the statute calls for the court to order a new trial unless the plaintiff consents to the reduced award. RCW 4.76.030. The court can leave the jury's liability verdict intact and order a new trial on the issue of damages only. CR 59(a). But it may not substitute its judgment for that of the jury on the amount of damages, unless no substantial evidence supports it. RCW 4.76.030; *Cox v. Charles Wright Acad., Inc.*, 70 Wn.2d 173, 176-77, 422 P.2d 515 (1967).

Constitutional Considerations. The right of trial by jury on a legal claim is inviolate. CONST. art. I, § 21. The jury verdict must be upheld unless the court finds from the record that the damages are outside the range of substantial evidence in the record, shock the conscience of the court, or appear to have been arrived at as the result of passion or prejudice. RCW 4.76.030; *Henderson v. Tyrrell*, 80 Wn. App. 592, 631, 910 P.2d 522 (1996); *Thompson v. Berta Enters., Inc.*, 72 Wn. App. 531, 542, 864 P.2d 983 (1994). "Regardless of the court's assessment of the damages, it may not, after a fair trial, substitute its conclusions for that of the jury on the amount of damages." *Cox*, 70 Wn.2d at 176. RCW 4.76.030 accordingly authorizes the court to reduce a jury's damages only with the plaintiff's consent, as an alternative to a new trial.

Here, the court never offered Green the alternative of a new trial, and for good reason. It ruled that the trial was fair and the jury was not influenced by passion or prejudice. The record supports this conclusion. RCW 4.76.030 does not, therefore, empower the court to substitute its assessment of the damages for the jury's.

■ ■ The next question is whether the verdict is supported by the evidence. We independently review the record to determine whether substantial evidence supports the verdict. *Palmer v. Jensen*, 132 Wn.2d 193, 198, 937 P.2d 597 (1997). If it does, the verdict must be unconditionally reinstated. RCW 4.76.030; *Mason v. Mortgage Am., Inc.*, 114 Wn.2d 842, 850, 792 P.2d 142 (1990).

The record contains the testimony of architect Jerry Ressa. Report of Proceedings (RP) at 436. Mr. Ressa prepared design plans for Phase II with and without vacation of Sharp Avenue. He testified the project could include 215 units without the vacation of Sharp. RP at 440. He testified the site is approved for development to its highest and best use. RP at 441. The site qualifies for the Spokane Municipal Code's allowance for bonus density—an additional 30 percent over the suggested Neighborhood Plan density of 44 units per acre. RP at 442-43. Also, units without kitchens do not count toward the density limit; there is no code limit to the number that can be built. RP at 443.

Vacation of Sharp would add 33,697 square feet. RP at 451-52. This increases the possible units to 390. RP at 452. Mr. Ressa prepared a plan for a six-story building with parking in excess of code parking requirements. RP at 447-48. These 390 units would be in compliance with all applicable zones, codes, ordinances and regulations. RP at 454-55. It was Mr. Ressa's expert opinion that the City would vacate Sharp Avenue with the possible exception of retaining the rights to a bike path for access to the river. RP at 480.

Thomas J. Meenach III is a professional real estate appraiser specializing in residential care properties. RP at 510. He had been involved in appraisals of this property since 1985 so he was very familiar with the site. RP at 519-20. He testified that properties are always appraised at their highest and best use, regardless of the use actually planned. RP at 526. The subject property is zoned R-4D, elderly housing, which allows a density exceeding the standard R-4 zoning. RP at 527. Mr. Meenach had previ-

ously determined that 215 units could be built. RP at 528. He agreed with Mr. Ressa's determination that 390 units could be built. RP at 539. Mr. Meenach estimated the value of the property at $1,425,650, based on 390 units. RP at 539. He testified the market for elderly residential units was very strong, with most of the major facilities having waiting lists. RP at 549.

Green testified that the Phase I developer's fee was merely deferred, not abandoned. RP at 676. McAllister testified that entitlement to the fee is over and above the value of the land or the owner's equity in the land, payable when the property is sold, if not before. RP at 1530. Appraiser DeWitt Sherwood testified that a comparable project recently sold for more than $14 million. If the jury inferred a comparable value for Phase II, this would place the verdict easily within the range of the evidence. The jury might also have inferred that Green would have been entitled to a construction management fee on Phase II proportionate to the $30,000 he earned on Phase I. The evidence would also support a jury finding that Sharp Avenue would likely have been vacated, making possible a bigger development than the conservative 215-unit estimate. Green also presented unrebutted market feasibility studies showing that the demand for this kind of residential care housing was high and likely to remain high. RP at 565, 920, 1182.

If then the jury found that Sharp would be vacated, its award is well within the range of the evidence. The jury's damages are within the range of the evidence and its reasonable inferences and must be sustained.

■ The court was of the opinion that former RCW 25.04.210, repealed by *Laws of 1998*, ch. 103, § 1308 (effective Jan. 1, 1999), which makes partners accountable as fiduciaries,[2] authorized the court to make findings

---

[2] "Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of the property." Former RCW 25.04.210(1).

as to profits, benefits and development potential of the partnership, and Green's benefit of the bargain and expectancy damages. So it entered findings of fact concerning the contract damages. The court was not persuaded that Sharp would have been vacated by trial date, because the adversarial relationship that developed between the parties made it unlikely that the partners would give the required consent. Nor was the court convinced that the partners ever intended to develop the property to its maximum density.

But the finder of fact here was the jury, not the court. The jury may well have found that the preponderance of the evidence favored the probability that Sharp Avenue would have been vacated absent the breach, because vacation was not only contemplated but actively sought, and was within the partnership's power to accomplish. The jury could have found from the evidence that a 390-unit development was the highest and best use of the property and should form the basis of Green's damages.

The remittitur then deprived Green of his constitutional right to a trial by jury. *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 654, 771 P.2d 711, 780 P.2d 260 (1989). The record contains ample evidence to support the jury's damage award. The verdict must be reinstated.

DEFENSE—INEVITABLE PARTNERSHIP DISSOLUTION

B.W.M. contends for the first time on appeal that the applicable partnership act, former chapter 25.04 RCW, repealed by *Laws of* 1998, ch. 103, § 1308 (effective Jan. 1, 1999), precludes Green's breach of contract claim. B.W.M. argues that, even if it had honored the Letter of Understanding and made the required loans, Green would have been obliged to assign his interest in the partnership in exchange. Former RCW 25.04.310(1)(c) allows nonassigning partners to dissolve the partnership—without the consent of partners who have assigned their interest—without

The new partnership act, chapter 25.05 RCW, applies only to actions commenced or rights accrued after June 11, 1998. RCW 25.05.907.

violating the partnership agreement. Absent the breach, therefore, the partners would have lawfully dissolved the partnership under section .310(1)(c), and Green would have ended up in the same position. Therefore, he is not entitled to contract damages.

Green responds that speculation as to what might have happened if B.W.M. had honored its contract obligation is irrelevant. B.W.M. breached the agreement by not fronting Green's contribution. Green did not, therefore, assign his interest. Former RCW 25.04.310(1)(c) does not then relieve B.W.M. of its liability for breach.

■ First, we need not review this claim because it was not raised in the trial court. RAP 2.5(a); *State v. Davis*, 41 Wn.2d 535, 250 P.2d 548 (1952). But it has no merit anyway.

B.W.M. correctly states the substance of former RCW 25.04.310(1)(c). But its relevance here is unclear.

■ This would be a different lawsuit if B.W.M. had honored the contract and dissolved the partnership lawfully. *See Ashley v. Lance*, 80 Wn.2d 274, 278, 493 P.2d 1242, 62 A.L.R.3d 962 (1972) (rejecting similar argument that making partnership dissolution retroactive would resolve dispute over breach of partnership agreement).

The record contains ample evidence that the Letter of Understanding was an enforceable partnership agreement. Most of this evidence was elicited from Green on cross-examination. B.W.M. tried unsuccessfully to prove the Letter of Understanding was not a contract. RP at 754-78. Green also testified that for seven years the partners conducted themselves as if bound by the Letter of Understanding.

The partnership act does not preclude Green's contract claim.

"ADVICE OF COUNSEL" DEFENSE—BREACH OF FIDUCIARY DUTY

Green contends that the trial court erred by denying attorney fees based on its erroneous conclusion of law that

reliance on advice of counsel was an excuse. B.W.M. responds that Green failed to prove breach of fiduciary duty and the court then properly concluded that there was no fiduciary breach as a matter of law.

The court concluded it lacked authority to award fees as a matter of law, applying the fiduciary provisions of the former partnership act, chapter 25.04 RCW. RP at 485. We review this conclusion de novo. *Dempere v. Nelson*, 76 Wn. App. 403, 406, 886 P.2d 219 (1994). However, a fiduciary's breach does not mandate an award of fees. The choice is left up to the sound discretion of the court. *Kelly v. Foster*, 62 Wn. App. 150, 155, 813 P.2d 598 (1991). The amount of allowable attorney fees is within the discretion of the trial court, and we will overturn the award only if there exists a manifest abuse of discretion. *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 801, 557 P.2d 342 (1976) (partnership fiduciary breach; trial court's award of half the fees upheld).

Partners stand in a fiduciary relationship to each other and have an obligation to act in the utmost good faith. *Tang*, 87 Wn.2d at 800. Every partner must account to the partnership and hold as trustee for it any benefit or profit from any transaction connected with the liquidation of the partnership. Former RCW 25.04.210(1).

The court's conclusion that B.W.M. committed no fiduciary breach is inconsistent with the record and its own unchallenged findings that the partners secretly engaged an appraiser, paid for his services with partnership funds, did not inform Green of the result, secretly transferred the asset, and forced Green out of the partnership by means of the capital call. CP at 451-54. Unchallenged findings of fact are verities on appeal. *Davis v. Dep't of Labor & Indus.*, 94 Wn.2d 119, 123, 615 P.2d 1279 (1980).

Constructive Fraud. Conduct that is not actually fraudulent but has all the actual consequences and legal effects of actual fraud is constructive fraud. *Dexter Horton Bldg. Co. v. King County*, 10 Wn.2d 186, 191, 116 P.2d 507 (1941). Breach of a legal or equitable duty, *irrespective of moral guilt*, is "fraudulent because of its ten-

dency to deceive others or violate confidence." BLACK'S LAW DICTIONARY 314 (6th ed. 1990). This court has defined constructive fraud as failure to perform an obligation, not by an honest mistake, but by some "interested or sinister motive." *In re Estate of Marks*, 91 Wn. App. 325, 336, 957 P.2d 235, *review denied*, 136 Wn.2d 1031 (1998).

■ Disposing of partnership assets in an attempt to divest another partner of his interest in the property is a breach of fiduciary duty that constitutes constructive fraud. *Tang*, 87 Wn.2d at 800. Here, B.W.M.'s attempt to deprive Green of his interest in the land constitutes constructive fraud. The breach of fiduciary duty was established.

■ The court found the conduct excusable because the partners relied on advice of counsel. This is error. "One cannot discharge a duty by remaining ignorant of what that duty entails." *Senn v. N.W. Underwriters, Inc.*, 74 Wn. App. 408, 416, 875 P.2d 637 (1994). Ignorance of the affairs of a business to which one owes a duty of diligence, care and skill is not a defense from liability for fraud or malfeasance. *Id.* "Mere passivity and disavowal of knowledge alone do not and should not constitute a pass to freedom from responsibility." *Id.* at 417.

■■ Parties generally pay their own fees. *Mellor v. Chamberlin*, 100 Wn.2d 643, 649, 673 P.2d 610 (1983). Attorney fees may, however, be authorized by a recognized ground of equity. *Pa. Life Ins. Co. v. Dep't of Employment Sec.*, 97 Wn.2d 412, 645 P.2d 693 (1982). Breach of partnership fiduciary duty is such an equitable ground.

Generally, even when breach of fiduciary duty is established, the court has discretion to award attorney fees. *Tang*, 87 Wn.2d at 799. Especially when the plaintiff is suing to recover for himself alone, fiduciary breach does not mandate an award of attorney fees. *Kelly*, 62 Wn. App. at 155.

■ However, the innocent partner is entitled to his fees if the conduct constituting the breach violates the partnership agreement, or is "tantamount to constructive fraud."

*Tang*, 87 Wn.2d at 800; *Brougham v. Swarva*, 34 Wn. App. 68, 72, 661 P.2d 138 (1983). "A partner should share the expense of a lawsuit when he breaches his fiduciary duty to the other partners." *Tang*, 87 Wn.2d at 801 (citing 68 C.J.S. *Partnership* § 448 (1950)).

On remand, the trial court must exercise its discretion to award or deny fees. And its discretion must be based on tenable grounds or reasons. *Baird v. Larson*, 59 Wn. App. 715, 720-21, 801 P.2d 247 (1990).

### FINDINGS OF FACT—ACCOUNTING

██ We do not address B.W.M.'s assignment of error to the court's equitable findings of fact 3, 17, 20, 42, 44, 45, and 46 entered on May 12, 1999. B.W.M. offers no argument specific to any of these findings. And it gives no citations to the record regarding them.

██ We need not review a challenge to findings that does not cite to the record showing why the findings are not supported by the record. RAP 10.3(a)(5); *In re Discipline of Haskell*, 136 Wn.2d 300, 310-11, 962 P.2d 813 (1998). Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration. *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992). An assignment of error will not be considered unless its merit is apparent on its face. *State v. Waldenburg*, 9 Wn. App. 529, 535, 513 P.2d 577 (1973).

### CONCLUSIONS OF LAW—ACCOUNTING

B.W.M. assigns error to the court's equitable conclusions of law 8, 9, and 10. These represent the court's dollar valuation of the land and Green's 35 percent share. B.W.M. does not address the extensive evidence in the record supporting the valuation. It contends that Green somehow is precluded from recovering more than his original appraiser's valuation of $600,000.

██ The court's valuation is supported by the record, the

court's findings and the advisory verdict of the jury. The jury and the court may have formed a different impression of the credibility of the witnesses. Green himself testified to and explained his belief that the land was worth around $2,000,000. RP at 740.

PREJUDGMENT INTEREST

B.W.M. objects to the court's award of $214,708.60 in prejudgment interest at 12 percent on the partnership accounting judgment. It argues that prejudgment interest is payable only when the amount in dispute is liquidated. The value of Green's interest in the partnership asset was not liquidated. It had to be judicially determined. Therefore, prejudgment interest is not payable. Analogizing to discounting future damages to preset cash value, B.W.M. contends that prejudgment interest is never payable unless the prevailing party presents evidence of the appropriate interest rate. *Hinzman v. Palmanteer*, 81 Wn.2d 327, 336, 501 P.2d 1228 (1972).

Generally, judgments bear interest from the date of entry at the maximum rate permitted under the usury statute. RCW 4.56.110(3). If the judgment is on a contract that has an interest provision, the court will award interest according to the contract. RCW 4.56.110(1).

In nonpartnership civil cases, prejudgment interest is allowed when the purpose of the lawsuit is to disgorge a fixed amount of funds rightfully belonging to the plaintiff. The funds at issue must be liquidated. Liquidated means that the amount can be calculated precisely without resorting to opinion or discretion. *Mahler v. Szucs*, 135 Wn.2d 398, 429, 957 P.2d 632, 966 P.2d 305 (1998) (citing *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 33, 442 P.2d 621 (1968)); *Jones v. Best*, 134 Wn.2d 232, 242, 950 P.2d 1 (1998). The idea is to encourage the disgorgement of converted funds early in the litigation. *Mahler*, 135 Wn.2d at 430.

B.W.M. is correct that the amount of this judgment was

not liquidated. It could not be calculated with precision, but required the opinion of an advisory jury and the discretion of the court.

■■ ■■ The liquidated funds rule is, however, inapplicable in partnership cases. *Seattle-First Nat'l Bank v. Marshall*, 31 Wn. App. 339, 351-52, 641 P.2d 1194 (1982). Partnership affairs are governed by the partnership act, not the court's equitable discretion. *Guntle v. Barnett*, 73 Wn. App. 825, 833, 871 P.2d 627 (1994).

Here, former RCW 25.04.420 provides that a withdrawing partner is entitled to interest from the date of dissolution as determined by the trial court. *Harstad v. Metcalf*, 56 Wn.2d 239, 243, 351 P.2d 1037 (1960); *Berliner v. Greenberg*, 37 Wn.2d 308, 321, 223 P.2d 598 (1950).

Disallowing interest would allow the dominant partners to dissolve the partnership, dispute the value of the departed partner's interest, and use the disputed partnership property interest-free until entry of a judgment. "If the parties wish to preclude prejudgment interest in the event of a dispute, they may so provide in the partnership agreement." *Marshall*, 31 Wn. App. at 351.

Also, former RCW 25.04.220(1) provided that any partner has the right to a formal accounting of partnership affairs if he is wrongfully excluded from the partnership business. *Malnar v. Carlson*, 128 Wn.2d 521, 530, 910 P.2d 455 (1996).

The court allowed Green to elect either the jury's date-of-trial valuation, or the date-of-dissolution valuation with interest from that date. The court originally adopted former RCW 25.04.420, but then rejected it because Green withdrew from the partnership; he did not "retire." However, former RCW 25.04.420 controls.

B.W.M.'s likening of prejudgment interest to the present value interest rate on future judgments is unpersuasive. Green was entitled to prejudgment interest on the equitable accounting judgment at the statutory rate of 12 percent. RCW 4.56.110(3); RCW 19.52.020.

472

## CONCLUSION

In sum, then, we affirm the judgment on the jury's advisory verdict on the fair market value of the land. We reverse the court's order granting defendant's motion for remittitur and remand for reinstatement of the jury's verdict. We also remand for further consideration of the question of attorney fees. If the trial court awards Green attorney fees and costs, Green is entitled to fees and costs on appeal as prevailing party. Pursuant to RAP 18.1(i), the trial court may determine on remand the amount of fees on appeal.

KURTZ, C.J., and KATO, J., concur.