IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

SAMUEL KRAUTSCHEID, and GREEN     )
8 LEAF AG, L.L.C.,                               )        No. 37541-2-III
                                       )
            Appellants,             )
                                       )
      v.                               )
                                       )        UNPUBLISHED OPINION
JAMES [A.] E. KLAUSTERMEYER, SR.,    )
JAMES E. KLAUSTERMEYER, JR.,      )
KEN WISER, SHANNON ZINK,        )
HOLLINGSWORTH PRODUCE, LLC,    )
COLUMBIA RIVER GREENS, LLC,     )
ROAD 13.6, LLC, and ROYAL GREENS   )
PRODUCE, LLC,                      )
                                       )
            Respondents.           )
                                       )

STAAB, J. — The parties in this case are farmers. They set out to explore the feasibility of growing and harvesting spinach in the Columbia Basin. In the process, they created numerous limited liability companies. When the defendants indicated that they no longer wanted to work with Samuel Krautscheid, he sued, alleging the formation of a partnership, and seeking partnership distributions, profits, and losses. Following a bench trial, the judge found the existence of an unnamed limited partnership between Hollingsworth, LLC and Green Leaf AG, LLC, but otherwise entered a decision

primarily in favor of the defendants. On appeal, Krautscheid raises several issues but does not challenge the partnership's existence or parameters. Instead, he contends that the trial court erred by finding that these partners were not equal, and Green Leaf was not entitled to an equalization payment. Second, Krautscheid contends that he contributed funds to a limited liability company (LLC) that paid expenses for real property owned by another LLC, and he is therefore entitled to payment for the appreciated value of the property. Third, Krautscheid argues that he is entitled to payment for the value of goodwill appropriated by the defendants after the partnership dissolved. After a thorough review of the evidence and relevant authority, we are satisfied that sufficient evidence supports the trial court's findings and affirm the trial court's conclusions of law.

## FACTS

The following facts are taken mainly from the trial court's memorandum decision.

A. 2016 CLAIM FOR DISTRIBUTION OF PROFITS.

In 2014, Jim Klaustermeyer, Sr. planted a test plot of spinach on his property. Ken Wiser heard about the test plot and visited the property with a friend. At the time, Wiser was an employee of a franchise owned by the plaintiff, Samuel Krautscheid. Wiser suggested to Krautscheid that they look into the feasibility of growing spinach as a commercial crop.

The following year, in 2015, Wiser formed Columbia River Greens, LLC (CRG). That same year Wiser and Krautscheid attempted to grow spinach on land owned by Krautscheid but could not produce a commercial crop.

Meanwhile, the Klaustermeyer group (consisting of Jim Klaustermeyer, Sr., Jim Klaustermeyer, Jr., and Shannon Zinc) grew and sold a crop of spinach on their property. Wiser and Krautscheid provided the Klaustermeyer group with the harvester for this crop, and CRG LLC, owned by Wiser, procured a rented vacuum cooler. Sam Krautscheid was present for part of the 2015 spinach harvest and assisted with the labor. The parties agreed to share the expenses and profits from the 2015 spinach crop harvested from Klaustermeyer's property.

In 2016, Klaustermeyer and Krautscheid each decided to plant spinach on their respective properties. The Klaustermeyer group formed Hollingsworth, LLC to farm the Klaustermeyer spinach. Wiser and Krautscheid formed Green Leaf AG, LLC (GLA) for harvesting Krautscheid's spinach crop.

In early 2016, the parties (Klaustermeyer group, Wiser, and Krautscheid) talked about entering into a partnership to grow and market spinach. Wiser suggested they use his limited liability company, CRG. In January 2016, the parties met at an attorney's office to review a proposed amendment to CRG's limited liability agreement to make Krautscheid's LLC, Green Leaf, and Klaustermeyer's LLC, Hollingsworth, co-owners in

3

CRG.  However, each party expressed concerns about ownership interest and control in CRG.

By April 2016, it was evident that the parties would not be able to reach an agreement.  Nevertheless, they both had spinach in the ground that needed to be harvested.  Spinach must be harvested within 21 to 45 days of planting and then requires immediate cooling.  It is a sensitive crop with high risk.  Because Hollingsworth and GLA were the only spinach farmers in the Columbia Basin, they banded together out of necessity to create the infrastructure to grow and harvest spinach in 2016.  This agricultural infrastructure included equipment, marketing, buyers, packaging, storing, and transportation.

In April 2016, the parties loaned CRG money to implement the marketing, sales, packaging, storage, and transportation of the spinach crop.  Wiser arranged for the sale of the spinach and set planting schedules to control production, maximize sales, and avoid equipment use conflict.  During the 2016 growing season, neither party had any control over the other's farming practices and expenses.  Nor did the parties discuss whether or how to divide the proceeds from their spinach sales.  In fact, there was very little communication between the parties during this time.  The trial court found that each party agreed to accept CRG's offer of $0.44 per pound of spinach in 2016.  Krautscheid assigns error to this finding and argues that the $0.44 per pound was an advance, not the final price.  Nevertheless, the trial court noted that with so little communication between the

4

parties, the best indicator of the parties' agreement was their conduct, and each party accepted $0.44 per pound of spinach without reservation.

Based on this price, CRG paid GLA $348,823.20 and paid Hollingsworth $414,936.28. CRG sold the spinach crop on the "open market" to individual customers without a sales contract. When CRG was dissolved in January 2017, there were insufficient funds to repay the various loans provided by the parties.

B. ROAD 13.6 PROPERTY

At trial, Krautscheid asserted that he was entitled to the appreciated value of real property held by a limited liability company called Road 13.6 LLC.

In early 2016, while Wiser was putting together the infrastructure for the upcoming spinach harvest, and the parties discussed a proposal for working together, Jim Klaustermeyer, Sr. loaned $175,000 to CRG (owned by Ken Wiser). In turn, CRG loaned the money to a newly created LLC called Road 13.6, an entity formed by Ken Wiser in January 2016. In February, Road 13.6, LLC used these funds to purchase land on Road 13.6 to store a cooler. The land was located approximately equal distance between fields being farmed by GLA and Hollingsworth.

As noted above, in early 2016, there were ongoing discussions about forming partnerships and companies to work together and develop a spinach crop in the Columbia Basin. One of the proposals was to add GLA and Hollingsworth as members of Road 13.6, LLC. A proposed LLC agreement was admitted at trial, showing GLA, LLC, and

5

Hollingsworth, LLC as members of Road 13.6, LLC, but there are no signatures on the agreement.

At trial, Krautscheid introduced an initial secretary of state report for Leafy Greens Harvesting, LLC. Ken Wiser's attorney prepared the report. It had no signatures on it. The members are listed as "Krautzcheid (sic) Entity," "Klaustermeyer/Zink entity," and Ken Wiser. The report states that it was submitted on January 14, 2016. Leafy Greens Harvesting, LLC was renamed to Road 13.6, LLC on February 22, 2016.

At trial, this document was the sole basis for Krautscheid's claim to membership in Road 13.6, LLC. However, there was no additional evidence in the record to clarify the identity of the "entities" or the existence of any other Road 13.6, LLC members beyond Wiser. Wiser denied that Krautscheid was a member of Road 13.6, LLC. RP at 95. Krautscheid admitted that he made no contribution to Road 13.6, LLC (aka Leafy Greens) or signed any agreements or paperwork. The parties ambiguously testify that he was "voted out" in January 2017. Meanwhile, all of the expenses related to the property on Road 13.6, LLC were paid by CRG, Wiser's LLC. CRG paid interest on the loan from Klaustermeyer, Sr., paid for improvements to the property, and paid the property taxes. Shortly before trial, the Road 13.6 property had an assessed value of $252,395.

C. CLAIM FOR GOODWILL

At trial, Krautscheid also claimed that the unnamed partnership developed goodwill, customer relations, and contracts that became the partnership's property.

6

Krautscheid alleged that Wiser's notice that the partnership was terminating was too late for Krautscheid to develop his own contracts. Krautscheid also contends that after the partnership dissolved in late 2016, Ken Wiser and the Klaustermeyer group continued farming spinach under a different name, using the partnership's goodwill, contracts, and customers. Krautscheid claimed he was entitled to his share of the 2017 gross earnings received by Royal Greens Produce, LLC, the company created by Wiser and the Klaustermeyers in 2017.[1]

The defendants disputed this claim and argued that there was no partnership. To the extent that there was a partnership, it was dissolved in 2016, and all assets were distributed. At trial, Wiser testified that in June 2016, he notified Krautscheid that the Klaustermeyers were unhappy with the GLA product and that he did not want to farm together as GLA anymore because "we just farm differently." Jim Klaustermeyer, Jr. testified they did not want to farm with Krautscheid because they had different farming philosophies. Meanwhile, Krautscheid continued to act as if the parties would be farming together. Not feeling heard, Wiser followed up with a July text message indicating "we're not farming anymore" meaning GLA. Wiser and Krautscheid disagreed on whether they communicated further about this issue. However, both testified to a

---

[1] Krautscheid is not asking for a share of Royal Greens' 2017 net profits since Royal Greens operated at a significant loss in 2017. Instead, Krautscheid is seeking a share of the gross receipts.

November 21, 2016, meeting where Wiser tried to convince Krautscheid not to grow spinach the following year due to poor crop quality. During that meeting, Wiser also told Krautscheid that if he could not farm "the Klaustermeyer way" then they did not want to work with him anymore. Krautscheid admitted that he understood that CRG might not provide harvest and cooling services for GLA the next year. On November 27, 2016, Wiser e-mailed their broker, Mike Scanlon, with CRG's crop load projections for 2017.

Wiser and Krautscheid met again on December 20, 2016, to dissolve GLA, the LLC they had formed to grow spinach. During that meeting, Krautscheid asked Wiser what sales rate CGA would offer him for spinach in the future. Krautscheid also assumed that the partnership had already created contracts for the 2017 crop, and he told Wiser that he wanted his share of those contracts. The Klaustermeyers were not part of these conversations and never met with Krautscheid.

CRG handled the GLA marketing through the end of the 2016 season. However, Wiser did not confirm CRG product volume or initiate the 2017 season sales with a buyer, State Garden, until early January 2017. Via text message on December 28, 2016, Wiser notified Krautscheid that the Klaustermeyers wanted to end all ties that year. GLA formally dissolved and wound up business activities in January 2017, effective December 31, 2016. Simultaneously in January, Wiser told Krautscheid that CRG would also cease. CRG did not profit in 2016. CRG dissolved in December 2016, and wound up business activities in June 2017.

8

At a June 2017 meeting, Wiser and Klaustermeyer Jr. provided Krautscheid with an accounting and net payout of all debts owed from CRG to GLA and Hollingsworth. The final disbursement payout to Krautscheid after deduction of CRG expenses was $14,749.36. During the CRG wind-up, there was not enough capital left to pay debts owed to Klaustermeyer, although the Road 13.6 loan appears to have been paid. The losses on the 2016 crop were split equally between GLA and Hollingsworth. At the time, Klaustermeyer, Jr. thought that Krautscheid agreed with the settlement.

In early 2017, Ken Wiser and Hollingsworth, LLC formed Royal Greens Produce, LLC. Wiser transferred his remaining post-windup CRG assets and debts into Royal as his capital contribution. CRG and Royal Greens share the same physical and mailing addresses. In an e-mail to a spinach customer, State Garden, Inc., on January 20, 2017, Wiser indicated that CRG had changed its name to Royal Greens Produce, LLC, for the 2017 contract. Scanlon believed this to be the case. Royal operated at a loss of approximately $435,000.00 in 2017. Royal operated profitably in 2018 with a net income of $598,929.00. Krautscheid did not share any expenses with the other parties in 2017 or 2018.

In early 2017, Krautscheid formed Miss Amy's, LLC in his wife's name to take advantage of preferences given in contracting to women-owned businesses. Krautscheid had flown to California in December 2016 to develop his own sales contacts. Krautscheid knew all the 2016 buyers, had access to them, and talked to them all the

time.  He knew the broker Scanlon, and Scanlon had viewed GLA fields in 2016.

Krautscheid claimed that he did not contact Scanlon until late spring 2017 when it was

too late to sell spinach because Wiser asked him not to do so.  Wiser denied saying this to

Krautscheid.  RP at 588-89**.**  Scanlon testified that neither Wiser nor the Klaustermeyers

ever discouraged him from dealing with Krautscheid.  Scanlon also testified that

Krautscheid could have sold spinach on the open market through him and could have

sought his own contracts in 2017 and 2018.  The market could easily support the

production of two sellers in the Columbia Basin area.

In January 2017, Miss Amy's bought equipment, including a spinach cooler from

GLA.  Scanlon testified that based on Krautscheid's previous 2016 meeting at the State

Garden headquarters and other previous groundwork done by Krautscheid, Miss Amy's

had a qualified food safety program that could sell to State Garden in 2017.  Miss Amy's

sold a small amount of 2017 fall spinach through Scanlon.  Scanlon testified it is common

for spinach to be sold on the open market.  However, spinach crop sales are a high-risk

"gamble" due to numerous uncontrollable factors.  The market is sensitive to quality.

Scanlon testified that Krautscheid was not selling spinach in the spring and summer of

2017 because he was working on issues with weeds.  However, another broker bought

Miss Amy's spring 2017 crop of curly spinach despite the weeds.  Several buyers offered

to purchase spinach in 2018, but Miss Amy's did not attempt to grow spinach in 2018

because they wanted contracts.

10

ANALYSIS

A. EQUALIZATION PAYMENT FOR 2016

On appeal, Krautscheid argues that the trial court erred by failing to find that the parties were equal partners in 2016 and that Krautscheid was entitled to an equalization payment. In support of this argument, he contends that there is a statutory presumption that partnership profits will be divided equally in proportion to partnership share and that the evidence did not overcome this presumption at trial. Since the presumption controls, he contends that income from the sale of spinach in 2016 should have been aggregated and divided equally instead of paying each partner per pound of spinach produced.

In 1998, Washington adopted the Washington Revised Uniform Partnership Act (RUPA), ch. 25.05 RCW. *Horne v. Aune*, 130 Wn. App. 183, 192, 121 P.3d 1227 (2005); LAWS OF 1998 ch. 103 sec. 807, effective June 11, 1998. RUPA is a "gap filler" that only governs partnership affairs to the extent not otherwise agreed to by the partners in the partnership agreement. *Id*. at 200. The "agreement" of the parties as found by the court is the law of the partnership. *Id*. at 201 n.8. The existence of a partnership may be implied from the circumstances. *Bengston v. Shain*, 42 Wn.2d 404, 409, 255 P.2d 892 (1953); RCW 25.05.055. Partnership contract may be implied from the conduct of the parties. *Eder v. Reddick*, 46 Wn.2d 41, 49, 278 P.2d 361 (1955); *Malnar v. Carlson*, 128 Wn.2d 521, 535, 910 P.2d 455 (1996) (the partnership agreement is a question of fact). RUPA allows for a trial court to determine the existence of a partnership and distribute

partnership assets without an accounting. *Simpson v. Thorslund*, 151 Wn. App. 276, 285, 211 P.3d 469 (2009). Generally, "Each partner is entitled to an equal share of the partnership profits and is chargeable with a share of the partnership losses in proportion to the partner's share of the profits." RCW 25.05.150(2).

Here, the trial court's written findings of fact indicate that the trial court weighed the evidence and made factual determinations. Hence, our appellate review of these findings of fact is limited to whether the facts are supported by substantial evidence and whether the findings of fact support the trial court's conclusions of law and judgment. *Price v. Kitsap Transit*, 125 Wn.2d 456, 465, 886 P.2d 556 (1994). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the declared premise. *Pardee v. Jolly*, 163 Wn.2d 558, 566, 182 P.3d 967 (2008). Where challenged findings of fact, upon which the trial court's conclusions rest, are supported by the record, a reviewing court will not substitute judgment for that of the trial court. *Holland v. Boeing Co.*, 90 Wn.2d 384, 391, 583 P.2d 621 (1978).

We hold that substantial evidence supports the trial court's findings of facts, and those facts support the trial court's conclusion. The trial court found an unnamed limited partnership between GLA, LLC and Hollingsworth LLC, and that it was terminated at the end of 2016. CRG was not a partner of this unnamed partnership. Neither party assigned error to these findings.

The court also found that "[t]he parties were savvy enough to retain attorneys, form LLCs, enter into sophisticated written LLC agreements, and grow and sell spinach through these LLCs. But the parties were never able to reach an overarching written agreement or contract between these LLCs." Clerk's Papers (CP) at 226. Instead, the parties loaned money to CRG to create an infrastructure for harvesting and selling spinach in 2016.

Remarkably little evidence (testimony and documents) was presented by either side about communication between Krautscheid and the Klaustermeyers, either in person or by e-mail, text, or phone.[2] Krautscheid and the Klaustermeyers did not discuss whether or how to divide the proceeds from their spinach sales. Therefore, the scope of the partnership is deduced mainly from the parties' conduct. The best indicator of the party's agreement regarding the division of spinach proceeds is their conduct.

Wiser arranged for the spinach sales and set planning and planting schedules to accommodate equipment sharing. "[T]hey [both GLA and Hollingsworth] accepted the price offered by CRG of 44 cents per pound." CP at 224. There was no evidence of either side contesting this arrangement in 2016.

Nevertheless, Krautscheid assigns error to the court's finding that GLA and Hollingsworth agreed to accept $0.44 per pound of spinach from CRG as the final sale

---

[2] No evidence was presented of any communication between Krautscheid and Shannon Zink.

13

price. He points to testimony by Wiser and Klaustermeyer, Jr., suggesting that $0.44 per pound was an advance or a "good start" and not the final price. Krautscheid contends that because the parties failed to reach an agreement on how to share the final profits, the statutory presumption of sharing profits equally should apply. Krautscheid's argument fails because the per pound price, even if it was only an advance, is sufficient to overcome the statutory presumption. In this case, after CRG paid for expenses and the spinach based on production, there was no profit to be distributed.

Krautscheid also contends that the planting and harvesting schedule caused him to lose crops and suggests that since the schedule was a partnership decision, the partners should share in the losses attributed to the schedule. CRG set the planting and harvesting schedule. CRG was not a partner to the unnamed partnership. There is no evidence that the schedule was set or influenced by either GLA or Hollingsworth. There is no evidence that GLA and Hollingsworth agreed to share any risks associated with the schedule. On the contrary, when Krautscheid suggested that each partner leave a few cents per pound in a pool to spread the risk, Klaustermeyers rejected his proposal.

The trial court correctly concluded that the parties failed to reach an agreement to share losses and profits in 2016 but worked together out of necessity to share equipment and infrastructure. Each party to the partnership used their land, controlled their farming practices, and incurred their debts and expenses in those practices. Each earned their spinach sales according to the crops produced and sold to CRG at CRG's set rate. This

conduct established the limited partnership. The trial court did not err in dismissing

Krautscheid's claim for an equalization payment because there was no agreement to share

income equally.

## B. APPRECIATED VALUE OF ROAD 13.6 PROPERTY

Krautscheid assigns error the trial court's dismissal of his claim to distribute the

appreciated value of real estate owned by Road 13.6, LLC. At trial, Krautscheid

produced evidence that the parties discussed joint ventures through various limited

liability companies. The trial court found that the parties were not joint members of CRG

or Road 13.6. Krautscheid assigns error to the trial court's conclusion that "[t]he plaintiff

did not produce sufficient evidence or legal authority to support a recognizable claim in

law or equity relating to the Road 13.6 real property." CP at 223. On appeal, he

contends that the trial court improperly "discounted the significance" of certain evidence.

Br. of Appellant at 22.

During a bench trial, the judge sits as the finder of fact. "An essential function of

the fact finder is to discount theories which it determines unreasonable because the finder

of fact is the sole and exclusive judge of the evidence, the weight to be given thereto, and

the credibility of witnesses." *State v. Bencivenga*, 137 Wn.2d 703, 709, 974 P.2d 832

(1999). As an appellate court, we do not reweigh the evidence. *Harrison Mem'l Hosp. v.

Gagnon*, 110 Wn. App. 475, 485, 40 P.3d 1221 (2002). Instead, following a bench trial,

we review the record in a light most favorable to the prevailing party to determine if

substantial evidence supports the trial court's findings of fact and, if so, whether the findings support the conclusions of law. Since we do not reweigh evidence on appeal, we reject Krautscheid's argument that the trial court improperly discounted evidence.

Krautscheid also argues that his "contribution" to CRG created an ownership interest in the Road 13.6 property. His argument is that the contribution was used by CRG to pay the interest on the loan used to buy the property. As an owner, he was entitled to reimbursement of his share of the appreciated value of the property in 2016. The trial court's unchallenged findings of fact do not support Krautscheid's conclusion.

The trial court found that CRG borrowed money from Klaustermeyer Sr, and in turn, loaned the money to a new company called Road 13.6, LLC, to purchase the property. The court also found that the parties, including Krautscheid, loaned money to CRG to create the infrastructure to harvest and sell spinach. On appeal, Krautscheid incorrectly characterizes his transfer of money to CRG as a "contribut[ion]," and then argues that since CRG paid the interest on the property loan for Road 13.6, the unnamed partnership owned the property. Yet, Krautscheid does not assign error to the court's finding that he was not a member of CRG, and the transfer was a loan, not a contribution. Thus, it is a verity on appeal and supports the court's conclusion. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992). Krautscheid's loan to CRG does not create an equitable ownership interest in CRG or Road 13.6, LLC.

16

Instead, membership in Road 13.6 or any other LLC, including CRG, requires formal admission as a member. RCW 25.15.116.

C. DISTRIBUTION FOR GOODWILL

Krautscheid's third argument on appeal is that the trial court erred in denying his claim for a proportionate share of the contracts and business opportunities owned by the 2016 unnamed partnership and realized in subsequent years. The trial court found that GLA and Hollingsworth created an unnamed limited partnership to share resources for the 2016 spinach crop. The court also found that Krautscheid received reasonable notice that the parties would cut all ties and end any partnership at the end of 2016. Krautscheid does not assign error to these findings.

Nevertheless, Krautscheid contends that during 2016, Wiser prepared projections and engaged in marketing activities intended to generate sales in subsequent years. Krautscheid attributes these efforts to the unnamed partnership and contends he should be reimbursed for the business opportunities developed by the partnership in 2016. He also argues that Klaustermeyer and Wiser, doing business as Royal Greens in 2017, would not have obtained the opportunities and contracts in 2017 "without the parties' investments during the preceding years in the course of their partnership." To support this claim, Krautscheid cites the testimony of Michael Scanlan, who testified that Royal Greens would not have obtained the 2017 contracts without the history of work performed by CRG.

Wiser's contribution in 2016 was through his employment with CRG, a limited liability company created to market and sell the 2016 spinach crop of GLA and Hollingsworth. Any goodwill for marketing created by Wiser would belong to CRG. Krautscheid does not cite to any authority or part of the record suggesting otherwise. Krautscheid was not a member of CRG, and CRG was not a partner in the unnamed partnership found by the court. Nor was Wiser a member of the unnamed partnership found by the court except as a one-half owner of GLA. A business's goodwill is simply its positive reputation. *McLelland v. Paxton*, 11 Wn. App. 2d 181, 206, 453 P.3d 1 (2019). In this case, there is simply no evidence that the unnamed partnership found by the trial court had any reputation separate from GLA or Hollingsworth.

Krautscheid suggests that the unnamed partnership signed contracts in 2016 for the 2017 crop, and he is entitled to his share of these contracts. He does not point to anywhere in the record showing that contracts were signed in 2016 on behalf of the unnamed partnership for the 2017 season. At best, Krautscheid points to e-mails by Wiser to a customer discussing "thoughts" about the 2017 crop.

Krautscheid also argues that the unnamed partnership developed goodwill in 2016 by demonstrating the ability to grow consistent, high-quality spinach. He contends that Klaustermeyer and Wiser used the unnamed partnership's goodwill to develop new contracts in 2017 without compensating Krautscheid. We reject this argument as well. The existence of goodwill is a question of fact. *Berg v. Settle*, 70 Wn.2d 864, 867, 425

18

P.2d 635 (1967). Where each partner continues their own business activities after the division of assets of the former partnership, no goodwill accrues for which either is entitled to be paid. *Harstad v. Metcalf*, 56 Wn.2d 239, 351 P.2d 1037 (1960).

In addition to finding that the partnership dissolved in 2016, the court found that Krautscheid was not entitled to compensation for goodwill because he could have just as easily developed new contracts and sold spinach on the open market. In other words, to the extent the unnamed partnership developed goodwill, it was just as accessible to Krautscheid as it was to the other parties. Krautscheid assigns error to this finding. The testimony of Michael Scanlon supports the finding. Scanlon testified that he was available to line up sales for Krautscheid in 2017, which Krautscheid could have sold spinach on the open market and could have sought his own contracts in 2017, and that Krautscheid was not selling spinach in the spring and summer of 2017 because he was working on issues with weeds. Krautscheid points to contrary evidence in the record. The trial court found Scanlon's testimony more credible. We will not substitute our judgment of the evidence for that of the trial court on appeal.

In this case, there is no evidence in the record that the parties' unnamed partnership in 2016 accumulated any goodwill or reputation. To the extent that any goodwill was created, it was done by Wiser as an employee of CRG, a separate company developed for marketing and selling the spinach. Krautscheid points to contracts signed by Royal Greens in 2017 and argues that Wiser told buyers there was a change in name

19

only. He implies that Wiser said this to take advantage of the partnership's goodwill. But the name change on the contracts was from CRG to Royal Greens. Again, Krautscheid was not a member of CRG.

Finally, Krautscheid argues that Royal Greens is a continuation of the partnership but continues to conflate the unnamed partnership and CRG. Indeed, Krautscheid argues that "Royal Greens is a mere continuation of the parties partnership, portrayed as nothing more than a change of name. The Klaustermeyers, Zink, and Wiser merely rolled over their investments from CRG to Royal Greens." Since CRG was not a partner and Krautscheid was not a member of CRG, any transfer of assets or debts from CRG to Royal Greens does not impact Krautscheid, and his successor liability claim must fail. And while the trial court did not make findings specific to Krautscheid's claim for intentional interference with business expectancies, the court did find that Krautscheid and GLA could not show damages for such a claim. Essentially, any goodwill was also available to Krautscheid, and Krautscheid did not lose any business to Royal Green. The spinach market was big enough for both of them.[3]

We hold that the trial court did not error in concluding that Krautscheid was not entitled to an equalization payment for the 2016 spinach crop, he was not entitled to

---

[3] For the first time on appeal, Krautscheid argues the "corporate opportunity doctrine" as an extension of unjust enrichment and tortious interference with business relationship arguments. We decline to address an issue not raised below. RAP 2.5(a). Either way, those issues are moot and not properly before this court.

No. 37541-2-III
*Krautscheid, et al. v. Klaustermeyer, et al.*

payment for the increased value of property that he did not own, and he failed to meet his

burden of proving misappropriation of any goodwill developed by the parties' unnamed

partnership.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Pennell, C.J.

21